Carol **COLEMAN**, Personal Representative of the Estate of Junita Martin, Appellant–Plaintiff,

v.

**CHARLES COURT, LLC**, Minnetrista Corporation, Ronald D. Clark, College Park Apartments, Lynn Garrison, Mark Burnett, Estate of Cecelia B. Garrett, by Special Representative John Feick, Estate of Donald Mark Garrett, by Special Representative John Feick, Estate of Patricia Ann Garrett, by Special Representative John Feick, and Indiana Associates, Ltd., L.P., Appellees–Defendants.

No. 18A02–0212–CV–994.

Court of Appeals of Indiana.

Oct. 16, 2003.

Rehearing Denied Dec. 16, 2003.

Stacy L. Kelley, Lewis & Hill, Indianapolis, IN, Attorney for Appellant.

Charles Court, L.L.C.: Dane L. Tubergen, Scott L. Bunnell, Fort Wayne, IN, Minnetrista Corporation: Thomas B. Bays, Henderson Daily Withrow & DeVoe, Gary L. Shaw, Skiles Hansen Cook & DeTrude, Indianapolis, IN, Attorneys for Appellees.

## OPINION

SHARPNACK, Judge.

Carol Coleman, personal representative of the estate of Junita Martin ("the Estate") appeals the trial court's grant of summary judgment in favor of Charles Court, LLC ("Charles Court"), Minnetrista Corporation ("Minnetrista"), and Lynn Garrison, Mark Burnett, the estate of Cecilia B. Garrison, by personal representative, the estate of Donald Garrett, by personal representative, and the estate of Patricia Ann Garrett, by personal representative (collectively "Garrison"). We will refer to the Appellees collectively as "the Defendants." The Estate raises seven issues,[1] which we consolidate and restate as:

I. Whether the trial court abused its discretion by denying the Estate's motion for enlargement of time to file its response to the motions for summary judgment;

II. Whether the trial court abused its discretion by denying the Estate's motion to strike and motion for a hearing to determine the admissi-

---

1. We direct the Estate's attention to Ind. Appellate Rule 46(10), which provides that "[t]he brief shall include any written opinion, memorandum or decision or findings of fact and conclusions thereon relating to the issues raised on appeal." Further, we also direct the Estate's attention to Appellate Rule 50(A)(2), which prescribes the contents of the appellant's appendix and provides, in relevant part, that:

    The appellant's Appendix shall contain a table of contents and copies of the following documents if they exist:

    \* \* \* \* \* \*

    (f) pleadings and other documents from the Clerks Record in chronological order that are necessary for the resolution of the issues raised on appeal.

    Appellate Rule 50(2)(f) required that the Estate include within its appendix all documents necessary for the resolution of the issues raised on appeal. Therefore, the Estate was required to include both Charles Court's and Minnetrista's joint motion for summary judgment as well as Garrison's motion for summary judgment. We also direct Garrison's attention Appellate Rule 50(3), which provides that:

    The contents of the appellee's Appendix shall be governed by Section (A)(2) of this Rule, except the appellee's Appendix shall not contain any materials already contained in appellant's Appendix. The Appendix may contain additional items that are relevant to either issues raised on appeals or on cross-appeal.

bility of the opinions contained in the affidavit of Lawrence J. Wheat, M.D.;

III. Whether the trial court abused its discretion by overruling the Estate's objection to the October 10, 2002 hearing date on the basis that it violated Ind. Trial Rule 56(C);

IV. Whether the trial court abused its discretion by striking the Estate's provisional response and designated materials; and

V. Whether the trial court abused its discretion by granting Charles Court's and Minnetrista's joint motion for summary judgment and Garrison's motion for summary judgment.

We affirm.

The relevant facts follow. Junita Martin was employed by Action, Incorporated ("Action"), a social services agency located in Delaware County, Indiana, from 1979 until October 2000. Until 1990, Action's office was located at 304 South Walnut in Muncie, Indiana.

In March of 1958, Patricia Ann Garrett and Donald Mark Garrett inherited 304 South Walnut Street as tenants in common. In 1960, Donald Mark Garrett died intestate and his interest in the real estate passed equally to his mother, Cecelia B. Garrett, and his sister, Patricia Ann Garrett. In August 1992, Patricia Ann Garrett died intestate and her interest in the real estate passed equally to her two chil-

dren, Lynn Garrison and Mark Burnett. In 1993, Cecelia B. Garrett died intestate and her interest in the real estate passed equally to her grandchildren, Lynn Garrison and Mark Burnett.

In 1990, Action moved its office from 304 South Walnut to 201 East Charles. In 1986, Minnetrista owned the property at 201 East Charles, and, in December 1996, Charles Court acquired the property from Minnetrista.

In May 1998, Martin was diagnosed with histoplasmosis[2] and on March 29, 2000, she filed her original complaint in this matter. On March 6, 2002, after approximately two years of litigation, Martin died.

On December 4, 2001, the trial court held a pretrial conference. Following the pre-trial conference, the trial court issued a pretrial order that provided, in pertinent part, that:

7. Counsel for Defendants advise the Court that Motions for Summary Judgment are anticipated. Parties to file any Motions for Summary Judgment on or before August 1, 2002.

8. The Court will conduct **hearing upon any pending Motions for Summary Judgment on October 10, 2002, at 1:30 p.m.**

Appellant's Appendix at 55 (emphasis in original). On June 14, 2002, the Estate filed a fifth amended complaint against Charles Court, Minnetrista, and Garrison.[3] The complaint alleged, in part, that:

\*      \*      \*      \*      \*      \*

2. "Histoplasmosis is a disease caused by the fungus Histoplasma capsulatum. Its symptoms vary greatly, but the disease primarily affects the lungs. Occasionally, other organs are affected. This form of the disease is called disseminated histoplasmosis, and it can be fatal if untreated.... H. capsulatum grows in soil and material contaminated with bat or bird droppings. Spores become airborne when contaminated soil is disturbed. Breath-

ing the spores causes infection. The disease is not transmitted from an infected person to someone else." Center for Disease Control, Division of Bacterial and Mycotic Diseases, Disease Information, Histoplasmosis, http://www.cdc.gov/ncidod/dbmd/diseasein-fo/histoplasmosis—g.htm (last visited August 28, 2003).

3. The Estate also named Indiana Associates, LTD., LP, Ronald Clark, and College Park

10. While Martin was employed by or residing upon premises of the Defendants, Martin was exposed to hazardous airborne spores from "bird droppings", high levels of carbon dioxide, mold, and inadequate ventilation causing a fungal infection which ultimately lead to her death.

\*    \*    \*    \*    \*    \*

14. Defendants knew of or should have known that the hazardous airborne spores from "bird droppings", high levels of carbon dioxide, mold, and inadequate ventilation had toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting, or otherwise absorbing them.

\*    \*    \*    \*    \*    \*

20. At all material times, Defendants negligently failed to maintain, manage, inspect, survey, or control their premises or to abate, correct or warn of the existence of the dangerous conditions and hazards on their premises.

21. The breach by the Defendants of their duties to Martin was a direct and proximate cause of Martin's development and contraction of the fungal infection known as histoplasmosis which resulted in damages and death.

*Id.* at 41–47. On June 25, 2002, the trial court conducted a hearing and subsequently issued an order that provided, in part, that: "The Court Grants extension of deadline, and the Court's Order on Con-

duction of Pre–Trial Conferences is now Amended in that the deadline for filing dispositive Motions is now extended to September 1, 2002." *Id.* at 60. The trial court also stated that this matter was set for "hearing upon any pending Motions for Summary Judgment on October 10, 2002." *Id.* at 59.

On August 30, 2002, Charles Court and Minnetrista filed a joint motion for summary judgment. On that same day, Garrison also filed a motion for summary judgment. On September 25, 2002, the Estate filed a motion for enlargement of time to file plaintiff's response to motions for summary judgment pending the completion of discovery and pending a hearing to determine the admissibility of the opinions contained in the affidavit of Lawrence J. Wheat, M.D. ("Dr. Wheat"). On the same day, the Estate also filed an objection and motion for a hearing to determine the admissibility of the opinions contained in the affidavit of Dr. Wheat. The trial court denied both of the Estate's motions. On October 4, 2002, the Estate filed a motion to reconsider the order denying its motion for enlargement to file plaintiff's response to motions for summary judgment. In the Estate's motion to reconsider, it objected for the first time to the October 10, 2002 hearing date.[4] The trial court denied the Estate's motion to reconsider. On October 8, 2002, the Estate filed a provisional response and designation of evidence in support of its response to the Defendants' motions for summary judgment.

On October 10, 2002, the trial court held a hearing. During the hearing, the Estate

---

Apartments, n/k/a Orchard Apartments as defendants in the fifth amended complaint. However, all three parties settled with the Estate and are not parties to this appeal.

**4.** We note that a copy of the motion to reconsider has not been provided to us. However,

during the summary judgment hearing, the trial court stated that "[t]he first objection I saw to the hearing was contained in your Motion to Reconsider which was not filed until October 4th, six (6) days before the hearing." Transcript at 4.

again objected to the hearing date on the grounds that it violated Ind. Trial Rule 56(C) and (I), which provide that "[t]he court shall conduct a hearing on the motion which shall be held not less than ten (10) days after the time for filing the response," and that "[t]he Court, for cause found, may alter any time limit set forth in this rule." The Estate argued that because its reply brief was due on October 2, 2002, the October 10, 2002 hearing date failed to comply with Ind. Trial Rule 56(C). The trial court again overruled the Estate's objection the hearing date. The Defendants made a motion to strike the Estate's provisional response and designated materials, which the trial court granted. Following the hearing, the trial court entered orders granting Charles Court's and Minnetrista's joint motion for summary judgment, as well as Garrison's motion for summary judgment.

## I.

■ The first issue is whether the trial court abused its discretion by denying the Estate's motion for enlargement of time to file its response to the motions for summary judgment. The Estate's motion for enlargement of time to file its response to the motions for summary judgment asserted, in part, that:

\* \* \* \* \* \*

2. On or before September 1, 2002, each of the Defendants filed a motion for summary judgment on Plaintiff's claims. Supporting each motion for summary judgment, the Defendants designated the Affidavit of Lawrence J. Wheat, M.D., an expert specifically employed by the Defendants to offer expert opinion testimony in this action. Among his opinions, Dr. Wheat's Affidavit, dated August 28, 2002, contains his opinion that "no medical basis exists to support [Plaintiff's] allegation that Martin acquired histoplasmosis at any of the Defendants' premises."

3. On July 31, 2002, the Plaintiff served Plaintiff's Discovery Requests of Expert Witness . . ., which were directed to each Defendant in this action, (hereinafter, "Plaintiff's expert discovery requests").

4. Each of the Defendants, with the exception of Minnestrista, sought an extension of time to file a response to Plaintiff's expert discovery requests until a date after Defendant had filed its motion for summary judgment. Upon serving a response to Plaintiff's expert discovery requests, all the Defendants referred to Dr. Wheat's Affidavit in lieu of answering the discovery request with th [sic] exception of Defendant Indiana Associates and Ronald Clark who have not filed a response to Plaintiff's discovery requests. However, we anticipate, based on those Defendants' motions for summary judgment, they will rely on the affidavit of Dr. Wheat as well.

5. Plaintiff first learned of Dr. Wheat's opinions when the undersigned reviewed the materials submitted in support of the Defendants [sic] motions for summary judgment. (footnote omitted)

6. Prior to September 1, 2002, the Plaintiff had no opportunity to (a) consider the evidence contained in Dr. Wheat's Affidavit; (b) conduct any investigation of Dr. Wheat's opinions; or (c) assemble evidence to counter Dr. Wheat's opinions.

\* \* \* \* \* \*

9. Indiana Trial Rule 56 generally provides that a motion for summary judgment is premature where the

moving party has failed to permit and provide discovery of essential evidence submitted in support of summary judgment.

10. Plaintiff seeks an enlargement of time to a date after the completion of discovery, and after a hearing has been conducted under Indiana Evidence Rule 104(a) to determine the admissibility of the opinions contained in the Affidavit of Lawrence J. Wheat, M.D.

Appellant's Appendix at 121–124. The trial court denied the Estate's motion. The trial court's order provided, in relevant part, that:

[The Estate's] Motion for Enlargement to File Plaintiff's response to Motions for Summary Judgment Filed by Each Defendant Pending the Completion of Discovery Pending a Hearing Pursuant to Indiana Evidence Rule 104(a) to Determine the Admissibility of the Opinions Contained in the Affidavit of Lawrence J. Wheat, M.D. does not comply with the requirements of Trial Rule 56(F) and, therefore, should be Denied.

*Id.* at 154.

The Estate argues that the trial court abused its discretion by denying its motion seeking an enlargement of time to respond to the motions for summary judgment. Ind. Trial Rule 56(C) provides that "[a]n adverse party shall have thirty (30) days after service of the motion to serve a response and any opposing affidavits." Ind. Trial Rule 56, however, gives a trial court discretion to order a continuance or to alter any time limits for the party opposing summary judgment to respond. The pertinent parts of Ind. Trial Rule·56 provide:

(F) When affidavits are unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

\* \* \* \* \* \*

(I) Alteration of Time. The Court, for cause found, may alter any time limit set forth in this rule.

When reviewing decisions within a trial court's discretion, we consider whether the trial court abused its discretion. *Ind. Univ. Med. Ctr., Riley Hosp. for Children v. Logan,* 728 N.E.2d 855, 859 (Ind.2000). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.*

The Estate argues that pursuant to Ind. Trial Rule 56, a motion for summary judgment is premature where the moving party has failed to permit and provide discovery of essential evidence submitted in support of discovery. Moreover, the Estate contends that "[the defendants] strategically waited until after filing motions for summary judgment to disclose the identity of their expert, [Dr. Wheat]. Faced with [the Estate's] interrogatories, the Defendant's strategy violated the letter and spirit of the discovery rules." Appellant's Brief at 13. Moreover, the Estate argues that "[a]ssuming arguendo, that the defect in Plaintiff's motion for enlargement was the fact that same was not filed as an affidavit, as required by the Rule, this ground ignores the provision in Ind. Trial Rule 56(I), authorizing the Court to exercise discretion 'to alter any time limit.'" *Id.* at 14. The Estate also insists that any defect present in the original motion for enlargement was cured when it filed a

verified motion to reconsider.[5] The Estate's argument is without merit.

The Estate's motion for enlargement of time indicated that it needed more time to respond to the Defendants' motions for summary judgment because it needed more time to conduct its investigation and gather evidence in support of its arguments. We have previously held that:

> T.R. 56 requires an adverse party to respond within 30 days by either (1) filing affidavits showing issues of material fact, (2) filing his own affidavit indicating why the facts necessary to justify his opposition are unavailable, or (3) requesting an extension of time in which to file his response.

*Seufert v. RWB Med. Income Props. I Ltd. P'ship*, 649 N.E.2d 1070, 1073 (Ind.Ct.App. 1995). Thus, pursuant to Ind. Trial Rule 56(F), the Estate was required to file affidavits with the trial court in support of its motion for enlargement of time. The Estate failed to file any affidavits with the trial court. Therefore, because the Estate failed to comply with the dictates of Ind. Trial Rule 56(F), the trial court did not abuse its discretion by denying the Estate's motion for enlargement of time. *See, e.g., Markley Enters., Inc. v. Grover*, 716 N.E.2d 559, 563 (Ind.Ct.App.1999) (holding that because the adverse party failed to comply with the requirements of Ind. Trial Rule 56, the trial court erred when it granted the adverse party's motion for extension of time to respond to the motion for summary judgment).

## II.

■ The next issue is whether the trial court abused its discretion when it denied the Estate's motion to strike and motion for a hearing to determine the admissibility of the opinions contained in Dr. Wheat's affidavit. The Estate's motion stated, in pertinent part, that:

> Supporting each Defendant's motion for summary judgment, the Defendants designated the Affidavit of Lawrence J. Wheat, M.D., (hereinafter, "Dr. Wheat's Affidavit"), an expert specifically employed by the Defendants to offer expert opinion testimony in this action.... A copy of Dr. Wheat's Affidavit, dated August 28, 2002, contains his opinion that "no medical basis exists to support [Plaintiff's] allegation that Martin acquired histoplasmosis at any of the Defendant's premises."
>
> Plaintiff OBJECTS and moves to strike the evidence contained in Dr. Wheat's Affidavit in the form of Dr. Wheat's conclusions. Dr. Wheat's opinions lack scientific reliability, and thus, his conclusions as well as his opinions are inadmissible in this action, and must be disregarded on summary judgment. Pursuant to Indiana Evidence Rule 104(a), the Plaintiff requests this Court set a date and time for hearing to determine the admissibility of Dr. Wheat's opinions.

Appellant's Appendix at 126–127. The trial court denied the Estate's motion to strike as well as its motion for a hearing to determine the admissibility of the opinions contained in Dr. Wheat's affidavit.

■ The Estate argues that "Dr. Wheat's opinions were naked and subjective." Appellant's Brief at 18. Specifically, it argues that Dr. Wheat: (1) failed to perform any field tests to confirm any of the conclusions stated in his affidavit; (2) never examined Martin; (3) never inspected or examined any of the Defendants'

---

**5.** As previously mentioned, a copy of the Estate's motion to reconsider has not been provided. As a result, we are not able to address the Estate's argument that any defect present in its motion for enlargement was subsequently cured by the motion to reconsider.

buildings; and (4) failed to review any of the air quality reports that described the Defendants' building as a "sick building." *Id.* at 17. Rulings on admissibility of evidence are reviewed for an abuse of discretion. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Logan,* 728 N.E.2d at 859.

In *Doe v. Shults–Lewis Child and Family Servs., Inc.,* 718 N.E.2d 738 (Ind.1999), our supreme court discussed the requirements for expert affidavits in the context of motions for summary judgment. There, our supreme court held that:

> [A]n expert opinion affidavit submitted in a summary judgment proceeding, in addition to asserting admissible facts upon which the opinion is based, must also state the reasoning or methodologies upon which it is based. The reliability of the scientific principles need not be established, but the trial court must be provided with enough information to proceed with a reasonable amount of confidence that the principles used to form the opinion are reliable. The trial court is in the best position to make such determinations, as it is in the trial court that the issue may be fully explored. This approach both allows the trial court to perform its gatekeeping function at the summary judgment stage of the proceedings and avoids placing an onerous burden upon the nonmoving party.

*Id.* at 750–751. Our supreme court added that in order to raise a genuine issue of material fact an expert's opinion must do more than assert bald conclusions or supply a "bottom line." *Id.* at 751.

Here, Dr. Wheat's affidavit included a brief description of his experience in the field of infectious diseases as well as a thirty-nine-page curriculum vitae. The af-fidavit also included the reasoning and methodologies upon which Dr. Wheat ultimately formed his opinions. For example, the affidavit provided, in relevant part, that:

4. In preparation for this affidavit, I have reviewed the Plaintiff's Fifth Amended Complaint for Damages.... I have also reviewed the medical records of the following health care providers for [Junita] Martin:

   a. Community Hospital of Anderson and Madison County;

   b. St. John Health System;

   c. Immediate Care Center;

   d. Timothy Hobbs, M.D., Anderson Family Health Specialists;

   e. Saiful Kabir, M.D.;

   f. Tracy Ikerd, M.D., Infections Disease of Indiana, P.S.C.;

   g. Choa–Wen Lee, M.D.;

   h. K–Mart Pharmacy;

   i. CVS Pharmacy;

   j. Apria Healthcare;

5. Based upon the supporting data, it is not conclusive [Junita] Martin ever acquired histoplasmosis or died from histoplasmosis. This is based upon the following:

   \* \* \* \* \* \*

   d. The granuloma diagnosed by Dr. Marciniak could be the result of sarcoidosis, tuberculosis, or histoplasmosis. Nothing in Martin's medical records shows that a culture on the granuloma was ever done to scientifically determine if it was the result of sarcoidosis, tuberculosis, or histoplasmosis. Without performing further testing of the granuloma, it is impossible to determine the exact cause of the granuloma.

e. Dr. Marciniak examined urine and blood samples on Martin on May 28, 1998, for the presence of histoplasma antigen and antibodies. Neither test showed the presence of histoplasmosis.

f. I have not been provided a copy of any autopsy showing any diagnostic testing to determine the presence of histoplasmosis in Martin's body.

g. Thus, there is no evidence to a medical certainty that Martin had histoplasmosis.

6. Assuming Martin did contract histoplasmosis, it is impossible to determine with medical certainty when or where she contracted the histoplasmosis. There is no medical basis to support the allegations that Martin acquired histoplasmosis at any of the Defendants' premises identified by [the Estate] in the Fifth Amended Complaint for Damages. This is based upon the following:

a. Exposure to birds or bird droppings does not necessarily cause an individual to acquire histoplasmosis. I have seen no evidence that any bird droppings at any of the Defendants' premises have been tested to determine whether they contain histoplasmosis. Unless there is a positive testing for histoplasmosis on the premises, the causation of a patient's histoplasmosis cannot be determined to a medical certainty, also it cannot be inferred that contact with bird droppings results in contracting histoplasmosis.

b. I have seen no evidence of any co-workers, neighbors, or tenants of Martin who were diagnosed with histoplasmosis at about the same time as Martin. If several people were exposed to histoplasmosis at the same location and were diagnosed with histoplasmosis within a few weeks of the exposure, it would be suggestive the histoplasmosis was contracted at the site.

c. Histoplasmosis is typically acquired at only one point in time. Medical studies show that repeated exposures to histoplasmosis actually lead to a patient developing immunity, reducing the severity of illness upon rechallenge. There is no medical evidence that repeated exposures are harmful or cause rare complications such as mediastinal pulmonary fibrosis.

d. Medical studies reflect that fifty-three and one-half percent (53.5%) of the population of Delaware County, Indiana has been exposed to histoplasmosis. In the vast majority of these individuals, the symptoms are mild and the condition is never diagnosed.

e. Exposures to high levels of carbon dioxide or mold cannot cause an individual to acquire, contract or develop histoplasmosis.

Charles Court's and Minnetrista's Joint Appendix at 84–86.

Based upon our review of Dr. Wheat's affidavit, we conclude that the affidavit satisfies the requirements outlined by our supreme court in *Doe v. Shults–Lewis Child and Family Servs., Inc.,* 718 N.E.2d 738, 750–751. Specifically, Dr. Wheat included admissible facts upon which his opinion was based. He also provided the reasoning upon which he ultimately formulated his conclusions. Moreover, the trial court was provided "with enough information to proceed with a reasonable amount of confidence that the principles used to form the opinion [were] reliable." *Id.* at

750–751. Accordingly, the trial court did not abuse its discretion by denying the Estate's motion to strike and motion for a hearing to determine the admissibility of the opinions contained in Dr. Wheat's affidavit.

### III.

█ The next issue is whether the trial court abused its discretion by overruling the Estate's objection to the October 10, 2002 hearing date on the basis that it violated Ind. Trial Rule 56(C). The Estate first objected to the October 10, 2002 hearing date in its motion to reconsider which was filed on October 6, 2002. The trial court denied its motion. The Estate also objected to the hearing date at the summary judgment hearing. Again, the Estate argued that the hearing date violated Ind. Trial Rule 56(C) which requires that "The court shall conduct a hearing on the motion which shall be held not less than ten (10) days after the time for filing the response." The Estate argued that the October 10, 2002 hearing date was less than ten days after the time that its response was due. The Defendants objected, arguing that the Estate had failed to object to the hearing date at the June 25, 2002, pretrial conference where the trial court extended the deadline for filing motions for summary judgment until September 1, 2002. The Defendants insisted that because the Estate had failed to object on June 25, 2002 it had subsequently waived the argument. The trial court overruled the Estate's objection, and stated that:

> The first objection I saw to the hearing was contained in your Motion to Reconsider which was not filed until October 4th, six (6) days before the hearing.... The Court also notes another interesting point here, the fact that the cause for the cut-off dates for Motions for Summary Judgment to be put back thirty (30) days was clearly precipitated by the

Plaintiff's action in filing a Fifth Amended Complaint.

Transcript at 5.

The trial court also referenced *Riggin v. Rea Riggin & Sons, Inc.*, 738 N.E.2d 292, 299 (Ind.Ct.App.2000). There, the plaintiff filed his response to the defendant's motion for summary judgment on July 8, 1999. *Id.* The hearing on the motion for summary judgment was held the next day. *Id.* We noted that Ind. Trial Rule 56(I) permitted the trial court for good cause to alter any time limit contained in the rule. *Id.* Because the trial was set to begin in five days, we held that the trial court had good cause to hold the hearing the day after the plaintiff filed his response in opposition to the defendant's motion for summary judgment. *Id.* The trial court also referenced *Ahnert v. Wildman*, 176 Ind.App. 630, 640, 376 N.E.2d 1182, 1189 (1978), where we held that "although hearing on the motions for summary judgment was held within ten days of the filing and service of notice, thus contravening the plain language of TR 56, the record contains no objection thereto by [the plaintiff]. Under such circumstances the defect is waived."

█ The denial of a motion for continuance is a matter within the trial court's discretion. When reviewing decisions within a trial court's discretion, we consider whether the trial court abused its discretion. *Logan*, 728 N.E.2d at 859. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.*

Based upon our review of the record, we conclude that the trial court did not abuse its discretion when it overruled the Estate's objection to the October 10, 2002 hearing date. Ind. Trial Rule 56(I) provides that, if the trial court has good cause,

it has the discretion to alter any time limit set forth in the rule. Here, the trial court had good cause to alter the time limit set forth in Ind. Trial Rule 56(C). On June 25, 2002, the parties agreed to extend the deadline for filing motions for summary judgment. Even though the original hearing date was set in accordance with a filing deadline of August 1, 2002, the Estate made no request to change the hearing date due to the later filing date. Moreover, as the trial court recognized, the extended filing deadline was precipitated by the Estate's filing of its fifth amended complaint. Further, the Estate did not object to the hearing date until four days before the hearing. Accordingly, the trial court did not abuse its discretion by overruling the Estate's objection to the October 10, 2002 hearing date. *See, e.g., Ahnert*, 176 Ind.App. at 640, 376 N.E.2d at 1189.

## IV.

■ The next issue is whether the trial court abused its discretion by striking the Estate's provisional response and designated materials. As previously mentioned, on August 30, 2002, Charles Court and Minnetrista filed a joint motion for summary judgment, and on that same day, Garrison also filed a motion for summary judgment. Both motions for summary judgment were filed via United States mail. Ind. Trial Rule 56(C) provides that: "An adverse party shall have thirty (30) days after service of the motion to serve a response and any opposing affidavits," and Ind. Trial Rule 6(E) provides that when "the notice or paper is served upon him by mail, three (3) days shall be added to the prescribed period." Thus, the Estate's response was due on October 2, 2002. On October 8, 2002, the Estate filed its provisional response to the motions for summary judgment as well as its designated materials in support of its provisional re-

sponse. The Defendants made a motion to strike the Estate's provisional response and designated evidence. The trial court granted the Defendants' motion.

■ A trial court has broad discretion in granting or denying a motion to strike. *Cua v. Ramos*, 433 N.E.2d 745, 752 (Ind. 1982). The trial court's decision will not be reversed unless prejudicial error is clearly shown. *Id.* The Estate argues that the "prejudicial effect of the Court's ruling to disregard the Plaintiff's response and designated materials cannot be seriously disputed." Appellant's Brief at 23. We disagree.

We addressed a similar issue in *Markley Enters., Inc.*, 716 N.E.2d at 562–563. There, the defendant filed a motion for summary judgment. *Id.* at 562. Approximately sixty days after the defendant filed the motion, the plaintiff's counsel realized that the motion had been filed. *Id.* The plaintiff filed a motion for an extension of time, which the trial court granted. *Id.* Shortly thereafter, the plaintiff filed his reply brief as well as the designated evidence in opposition to the motion for summary judgment. *Id.* The trial court ultimately granted the defendant's motion for summary judgment as to one issue but denied it as to another. *Id.* The defendant appealed. *Id.* We reversed the trial court and held that:

[The plaintiff] did not respond to the [defendant's] motion for summary judgment within thirty days. Nor did he request an extension of time or otherwise explain the cause of his delay within thirty days. Contrary to [the plaintiff's] argument, the trial court did not have unlimited discretion to expand the time within which he could file his response to summary judgment. Thus, the trial court erred when it granted [the plaintiff's] motion for extension of

time to respond to the [defendant's] motion for summary judgment.

*Id.* at 563. In reaching this conclusion, we noted that "the remedies provided by Ind. Trial Rule 56(F) and (I) were not available to a non-moving party who has failed to oppose or respond to the motion within the thirty-day limit established by Ind. Trial Rule 56(C)."

Likewise, here, the Estate failed to respond to the Defendants' motions within the thirty-day limit required by Ind. Trial Rule 56(C). Although the Estate filed a motion for enlargement of time within thirty-days of the Defendants' motions, the trial court denied the motion because it failed to comply with requirements of Ind. Trial Rule 56(F). Moreover, we have affirmed the trial court's denial of this motion. *See supra* Parts I, II. Accordingly, the Estate was bound by T.R. 56(C), which requires that an adverse party respond within thirty days after service of the motion. However, because the Defendants served their motions for summary judgment via mail, the Estate had an additional three days to respond. *See* Trial Rule 6(E). Because the Estate's provisional response and designation of evidence was filed after the thirty-three days had expired, the Estate failed to comply with this requirement of Ind. Trial Rule 56(C). As such, the trial court did not abuse its discretion by striking the Estate's provisional response and designated materials. *See, e.g., Grover,* 716 N.E.2d at 562–563.

## V.

The final issue is whether the trial court abused its discretion by granting Charles Court's and Minnetrista's joint motion for summary judgment and Garrison's motion for summary judgment. When reviewing a trial court's decision to grant or deny summary judgment, we apply the same standard as the trial court. Accordingly,

we must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law. *Carie v. PSI Energy, Inc.,* 715 N.E.2d 853, 855 (Ind.1999). Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the burden shifts and the nonmoving party must respond by designating specific facts establishing a genuine issue for trial. *Gehlbach v. Hawkins,* 654 N.E.2d 877, 879 (Ind.Ct.App.1995). If the nonmoving party fails to meet this burden, summary judgment in favor of the moving party is appropriate. *Id.*

When reviewing a motion for summary judgment, we may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. Ind. Trial Rule 56. Any doubt as to the existence of an issue of material fact or an inference to be drawn from the facts must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.,* 575 N.E.2d 630, 633 (Ind.1991). Although the nonmoving party bears the burden of demonstrating that the trial court's grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his or her day in court. *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997). Moreover, "[s]ummary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits or evidence, but the court shall make its determination from the evidentiary matter designated to the court." Ind. Trial Rule 56(C).

■ The Estate's fifth amended complaint alleged that the Defendants were negligent. To prevail on a motion for summary judgment in a negligence case, a defendant must demonstrate that the undisputed facts negate at least one element of the plaintiff's claim. *Ward v. First Ind. Plaza Joint Venture*, 725 N.E.2d 134, 135–36 (Ind.Ct.App.2000), *trans. denied.* The tort of negligence is comprised of three elements: (1) a duty on the part of the defendant in relation to the plaintiff; (2) a failure by the defendant to conform its conduct to the requisite standard of care; and (3) an injury to the plaintiff proximately caused by the failure. *Harris v. Traini*, 759 N.E.2d 215, 222 (Ind.Ct.App.2001).

In Charles Court's and Minnetrista's motion for summary judgment, they argued that the "designated materials show that there is no evidence that any actions or inactions on the part of Minnetrista or Charles Court proximately caused the injuries and damages of which [the Estate] complains." Charles Court's and Minnetrista's Joint Appendix at 1. In support of this contention, Charles Court and Minnetrista designated the affidavit of Dr. Wheat, wherein Dr. Wheat stated that "[b]ased upon the supporting data, it is not conclusive that [Junita] Martin ever acquired histoplasmosis or died from histoplasmosis." *Id.* at 32. Further, Dr. Wheat's affidavit also provided that "there is not evidence to a medical certainty that Martin had histoplasmosis," and that "[a]ssuming Martin did contract histoplasmosis, it is impossible to determine with medical certainty when or where she contracted the histoplasmosis." *Id.* at 33. Moreover, during the summary judgment hearing, Charles Court and Minnetrista also argued that:

> Dr. Wheat makes it clear that unless you were able to do some specific testing on these premises at a specific period of time, there's absolutely no way to say

where [Martin] might have inhaled these spores which caused this problem, if indeed, that's the way she got it, because Dr. Wheat also points out that while getting this condition from inhaling spores released from bird droppings is one (1) way to get it, there are, indeed, other ways.

Transcript at 24.

Likewise, Garrison made a similar argument. At the motion for summary judgment hearing, Garrison argued that Dr. Wheat's affidavit proved that there was no evidence that Garrison's actions proximately caused Martin's sickness. Garrison also argued that:

> The estate ... has not proved either with regard to Mark Burnett or Lynn Garrison or the line of previous estates that owned this property, that there was any duty owed to [Martin] because she left the property in 1990. Her diagnoses with regard to histoplasmosis was not until May of 1998. We've already discussed here Dr. Wheat's affidavit, which says that it is impossible to determine with medical certainty when or where she contracted this histoplasmosis. I would simply point out, Your Honor, that there was no duty owed to this individual, based on her own testimony that she has suffered no illness prior to 1990. There was no diagnosis of this until May of 1998. Therefore, we request the judgment not only on the element of proximate cause, but also on a lack of duty as well.

Transcript at 26–27.

Based upon our review of the record, we conclude that Dr. Wheat's affidavit negated an essential element of the Estate's claim, namely the element of proximate cause. The evidentiary matter properly designated to the trial court demonstrated that there were no genuine issues of mate-

rial facts and the Defendants were entitled to summary judgment as a matter of law. Therefore, the trial court did not abuse its discretion by granting Charles Court's and Minnetrista's joint motion for summary judgment and Garrison's motion for summary judgment. *See, e.g., Cloverleaf Apartments, Inc. v. Town of Eaton,* 641 N.E.2d 665, 668 (Ind.Ct.App.1994) (holding that the trial court properly granted the defendant's motion for summary judgment).

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

BARNES, J., and RILEY, J., concur.