## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 22 2020, 10:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert E. Ahlgrim
State Auto Insurance
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Patrick W. Harrison
Columbus, Indiana

David W. Stone
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brycor, Inc. d/b/a Meineke Car Care Center, | July 22, 2020 |
| *Appellant-Defendant,* | Court of Appeals Case No. 19A-CT-2963 |
| v. | Appeal from the Floyd Superior Court |
| Anthony Alexander, | The Honorable Susan L. Orth, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 22D01-1701-CT-139 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Brycor, Inc. d/b/a Meineke Car Care Center (Meineke), appeals the trial court's denial of its motion for partial summary judgment in favor of Appellee-Plaintiff, Anthony Alexander (Alexander). Alexander cross-appeals.

We reverse, enter partial summary judgment for Meineke, and remand. We deny Alexander's cross-appeal.

# ISSUES

Meineke presents the court with two issues, one of which we find dispositive and which we restate as: Whether a genuine issue of material fact existed that precluded entry of partial summary judgment on Alexander's personal injury claims against Meineke.

On cross-appeal, Alexander presents us with one issue, which we restate as: Whether Meineke was required to file a motion to correct error before pursuing the instant appeal.

# FACTS AND PROCEDURAL HISTORY

The facts most favorable to the non-moving party, Alexander, are as follows. In the later summer of 2016, Alexander, who is a medical doctor and a chemical engineer, owned a 2008 Lexus SUV (SUV). The SUV developed problems with its air conditioning system, and Alexander took it to Meineke in New Albany, Indiana, for repair. The first attempt at repair was unsuccessful,

so Alexander returned to Meineke for a second attempt. After he retrieved the SUV from Meineke after the second attempt at repair, Alexander drove it several times over the ensuing weeks from Jeffersonville, Indiana, to Chicago and back. On these trips Alexander ran the SUV's air conditioning with the windows closed. Around the same time, Alexander began experiencing fatigue, breathing issues, and severe headaches. On four occasions, Alexander found many flies inside the SUV after having all the windows and doors shut. In October of 2016, Alexander noticed that there was water on the carpet of the front passenger side of the SUV. On October 20, 2016, Alexander took the SUV to a Lexus dealership. Lexus employee David Newton (Newton) inspected the SUV and concluded that the evaporator drain had been left off the evaporator case, causing water to drain onto the SUV's floorboard and carpet. Newton also found damage to the SUV's dash pad assembly. The dashboard and carpet were removed and replaced. At Alexander's request, Lexus employees placed the wet carpet from the SUV into a plastic bag which was then sealed and placed in a box. Parts from the dashboard, including the ventilation system, were also placed into cardboard boxes. Alexander paid for the repairs to the SUV.

[5] The boxes containing the SUV's carpet and parts were stored in Alexander's garage until an indoor environmental consulting firm arrived on November 16, 2016, to perform surface fungal sampling on them. On December 6, 2016, the environmental firm generated a report stemming from that sampling. The report indicated that testing had revealed the presence of a moderate level of

"*Aspergillus/Penicillium*-like fungi" on the carpet and low-to-very-low levels of various other fungi[1] on the carpet and parts. (Appellant's App. Vol. II, p. 50). The report provided that *Aspergillus* and *Penicillium* are common molds found outdoors and indoors but that some species of these molds do produce toxins that are unhealthy to humans.

[6] On January 25, 2017, Alexander filed a complaint, which he amended on September 25, 2017, alleging that Meineke had negligently repaired his SUV, causing him personal injury and property damage. More specifically, Alexander alleged that Meineke's negligence had caused mold to accumulate in the SUV and his exposure to the mold had damaged his lungs and liver, necessitating past and future medical care. During discovery, Meineke deposed Alexander. Meineke also propounded requests for admission. Alexander responded to Request for Admission Number 12 (Request No. 12) as follows:

> [] Alexander does not possess a measurement of the alleged concentration or level of mold within his vehicle before the parts and carpet were removed by the Lexus dealership.
>
> Response: admit

(Appellant's App. Vol. II, p. 54).

---

[1] Neither party based its summary judgment arguments on these other fungi, and both parties concentrate their appellate arguments on the *Aspergillus* and *Penicillium* found on the SUV's carpet. We will concentrate our analysis there as well.

[7] On May 24, 2019, Meineke filed a motion for partial summary judgment on Alexander's personal injury claims only. Meineke argued that no genuine issue of material fact existed as to whether the mold at the base of Alexander's claims caused his symptoms. In support of its motion, Meineke designated portions of Alexander's deposition, the fungal testing report, and Alexander's admission to Request No. 12. The designated portions of Alexander's deposition showed that he testified that airborne *Aspergillus* or *Penicillium* "is not necessarily going to make you sick unless you have high concentrations of it" and that higher concentrations are possible in a contained environment. (Appellant's App. Vol. II, p. 42). Alexander had also testified that mold tends to grow better in dark, moist, unventilated spaces, mold can be dormant for years and become active when the conditions are right, and one would expect to find mold in a vehicle's carpet but not in the ventilation system.

[8] On August 9, 2019, Alexander filed his response in opposition to partial summary judgment which included his verified affidavit (the Affidavit) in which he averred that none of his claimed physical symptoms had occurred prior to Meineke working on the air conditioning in his SUV. Alexander further averred that, as a medical doctor and chemical engineer, he could identify mold and did identify mold under the dashboard and on the carpet of his SUV prior to taking it to the Lexus dealership. Alexander testified that

> [m]old is by analogy like pollen in the spring and fall. *It normally causes little if any problems until the quantity of the spores released increases to the point where one who is allergic to the spores begins having reactions.* This is what happened to [Alexander]. As the

mold increased because of the air conditioning drain not being connected to the evaporation case when [Alexander] would drive with the air conditioning on and the windows up the mold spores in the air caused physical injury. *[Alexander] was allergic to the type of mold in his vehicle.* . . . [Alexander] then began being treated by an internist and an ear nose and throat physician for the injuries *produced by this mold to which [Alexander] was hypersensitive and allergic[.] . . . Without the necessity of any evidence it is common knowledge that there are people who are allergic to penicillin, with [Alexander] being one of those people.*

(Appellant's App. Vol. II, pp. 57-58) (emphasis added). Alexander also averred that the removal of the carpet and dashboard from the SUV had stopped the progression of his symptoms. Alexander agreed with Meineke in the Affidavit that the types of mold found in his SUV "generally do not make people sick unless they are exposed to a high concentration of the mold. [] Alexander as an expert states that he was exposed to high concentrations of the mold and it made him sick." (Appellant's App. Vol. II, p. 59).

[9] On August 14, 2019, Meineke filed its Reply along with a motion to strike portions of the Affidavit, namely, (1) Alexander's references to a high concentration of mold within the SUV; and (2) Alexander's statements that the types of mold found on the carpet were the cause of his symptoms. Meineke argued that Alexander was estopped by his admission to Request No. 12 from referring to any concentration of mold in the SUV because he had admitted that he did not have a measurement of the mold level in the SUV before the carpet and parts were removed. As to Alexander's statements that the types of mold found on the SUV's carpet made him sick, Meineke argued that Alexander had

testified at his deposition that he did not have an allergy to penicillin and that he could not say, as a medical doctor, that his symptoms were caused by *Aspergillosis*. Meineke argued that the challenged portions of the Affidavit should be stricken because the non-movant in a summary judgment proceeding may not create a genuine issue of material fact by submitting contradictory testimony in an affidavit. Meineke quoted Alexander's deposition testimony in its Reply but did not attach copies of the deposition testimony, which had not been filed with the trial court.

[10]     On August 21, 2019, the trial court held a hearing on Meineke's motions to strike and for partial summary judgment. At the beginning of the hearing, the trial court stated on the record that the parties had reached an agreement to strike "as to the one issue that we were dealing with" and then asked the parties to present argument on the other issue. (Transcript Vol. I, p. 4). Counsel for Meineke and Alexander then argued regarding whether the portions of the Alexander Affidavit referring to a high concentration of mold in the SUV should be stricken. The trial court took the motion to strike under advisement and proceeded to hear argument on Meineke's motion for partial summary judgment.

[11]     On September 9, 2019, the trial court denied Meineke's partial summary judgment motion without entering findings of fact or detailed conclusions thereon. On September 20, 2019, the trial court held a final pre-trial hearing where, upon inquiry by Meineke's counsel, the trial court indicated that it had not yet ruled on Meineke's motion to strike portions of the Affidavit. Later that

day, the trial court issued a written order striking the portions of the Affidavit referring to a high concentration of mold in the SUV but ruling that references by Alexander that the mold found on the SUV's carpet was the cause of his symptoms was admissible.

[12] On December 3, 2019, the trial court convened a two-day jury trial on Alexander's complaint. The jury rendered a verdict in favor of Alexander and awarded damages in the amount of $150,000. Meineke did not file a motion to correct error following the entry of judgment.

[13] Meineke now appeals, and Alexander cross-appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[14] Summary judgment is appropriate if the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). We review both the grant or denial of summary judgment *de novo* and apply the same standard as the trial court. *Kerr v. City of South Bend*, 48 N.E.3d 348, 352 (Ind. Ct. App. 2015). The party moving for summary judgment bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Sargent v. State*, 27 N.E.3d 729, 731 (Ind. 2015). Meeting this standard is difficult for the moving party, for, unlike federal practice where the moving party may prevail merely by

showing that the party carrying the burden of proof at trial lacks evidence on a necessary element, in Indiana, we require that the moving party affirmatively "'negate an opponent's claim.'" *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (quoting *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994)). "Summary judgment is improper if the movant fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact." *Sargent*, 27 N.E.3d at 731-32. "All disputed facts and doubts as to the existence of material facts must be resolved in favor of the non-moving party." *Kerr*, 48 N.E.3d at 352. As the party appealing the trial court's denial of summary judgment, Meineke has the burden to persuade us that the trial court's ruling was improper. *Ind. Mich. Power Co. v. Runge*, 717 N.E.2d 216, 227 (Ind. Ct. App. 1999).

[15]     In addition, we note that the trial court did not enter findings of fact or detailed conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct. App. 2004). However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id.*

## II. *Causation*

[16]     Alexander's complaint alleged that Meineke negligently repaired the SUV's air conditioning system, causing him personal injury. In order to prevail in a negligence suit, a plaintiff must prove "three elements: (1) a duty on the part of

the defendant in relation to the plaintiff; (2) a failure by the defendant to conform its conduct to the requisite standard of care; and (3) an injury to the plaintiff proximately caused by the failure." *Coleman v. Charles Court, LLC*, 797 N.E.2d 775, 788 (Ind. Ct. App. 2003). To prevail on a motion for summary judgment in a negligence suit, a defendant must show that the undisputed facts negate at least one of these elements. *Id.*

[17]   Here, Meineke argues that the undisputed facts showed no causation between the mold in the SUV and Alexander's reported symptoms. In toxic tort cases such as this, causation is typically analyzed in terms of 'generic' and or 'individual' causation, both of which must be established by the plaintiff. *7-Eleven v. Bowens*, 857 N.E.2d 382, 389 (Ind. Ct. App. 2006). "General, or 'generic' causation has been defined by courts to mean whether the substance at issue had the capacity to cause the harm alleged, while 'individual causation' refers to whether a particular individual suffers from a particular ailment as a result of exposure to a substance." *Id.* An expert's opinion is not sufficient to show specific causation if it is based only upon a temporal relationship between an event and a subsequent medical condition. *Outlaw v. Erbrich Products Co.*, 777 N.E.2d 14, 29 (Ind. Ct. App. 2002), *trans. denied.* More specifically, we have held that testimony by an expert witness that exposure to a noxious substance caused a particular condition because the plaintiff was exposed and subsequently had symptoms was insufficient to establish causation without an analysis of the "level, concentration or duration of the exposure" to the substance in question and without sufficiently accounting for "the possibility of

alternative causes[.]" *See id*. (finding expert testimony insufficient in a chemical exposure case).

[18]    Pursuant to Indiana's summary judgment standard, in order to prevail on its motion, Meineke was required to affirmatively show that the mold found in the SUV was not the cause of Alexander's symptoms. *See Hughley*, 15 N.E.3d at 1004. In support of its motion for partial summary judgment, Meineke designated evidence that *Aspergillus* and *Penicillium* were found in the SUV, these molds do not normally produce illness unless a person is exposed to them in high concentrations, and there were only moderate levels of *Aspergillus* and *Penicillium* present in the SUV when testing was done after the parts and carpet were removed and stored in conditions which would encourage mold growth. With this evidence, Meineke met its burden of designating evidence tending to show that the *Aspergillus* and *Penicillium* found in the SUV could not have been the cause of Alexander's symptoms because the evidence showed that the *Aspergillus* and *Penicillium* did not exist on the parts or carpet at a concentration sufficient to cause illness.

[19]    Because Meineke made its initial showing negating causation, the burden then shifted to Alexander to show that there was a genuine issue of material fact on that element. *See Sargent*, 27 N.E.3d at 731-32. In response to Meineke's motion, Alexander designated the Affidavit in which he attempted to show causation in three ways, namely through his averments that (1) he was allergic to the *Aspergillus* and *Penicillium* found in the SUV; (2) as an expert, he found that there was a high concentration of mold in the SUV which made him sick;

and (3) circumstantial evidence of the timing of Meineke's work on the SUV and the onset of his symptoms showed causation. We conclude that none of these responses created a genuine issue of material fact.

[20] As to his contention that he was allergic to *Aspergillus* and *Penicillium*, Alexander had testified at his deposition that he was not allergic to penicillin and that, as a medical doctor, he could not say that his symptoms were caused by *Aspergillus*. Meineke contends that at the beginning of the August 21, 2019, hearing, Alexander agreed to strike the averments in the Affidavit that he was allergic to penicillin. Although the trial court referred to an agreement to strike by the parties at the beginning of the hearing, the exact nature of that agreement is not in the record. Therefore, we did not consider any agreement to strike that testimony in rendering our decision. However, the Affidavit was squarely at odds with Alexander's prior deposition testimony that he was not allergic to one allergen found in his SUV and the other allergen was not the source of his symptoms. The non-movant in a summary judgment proceeding may not create an issue of material fact merely by contradicting prior testimony. *See King v. Ebrens*, 804 N.E.2d 821, 825 (Ind. Ct. App. 2004) ("[A] party cannot create an issue of fact [to preclude summary judgment] by submitting an affidavit that contradicts prior deposition testimony.").

[21] Alexander argues that his deposition testimony that he was not allergic to penicillin and *Aspergillus* did not cause his symptoms was not properly designated to the trial court and is not part of the record on appeal. However, any objection Alexander may have had to our consideration of the portions of

his deposition quoted in Meineke's Reply is waived because he did not object to this material at the trial court level. *See Wells Fargo Ins., Inc. v. Land*, 932 N.E.2d 195, 201 (Ind. Ct. App. 2010) (finding Wells Fargo's challenge to deposition excerpts contained in Land's reply to its opposition to summary judgment to be waived); *see also Timberlake, Inc. v. O'Brien*, 902 N.E.2d 843, 849 (Ind. Ct. App. 2009) (holding that the rule that a party may not raise an issue for the first time on appeal applies equally to summary judgment proceedings). In addition, Meineke's Reply quoting the challenged deposition testimony was filed with the trial court, and, therefore, contrary to Alexander's assertions, Meineke has not improperly included material in its Appendix that was not before the trial court.

[22] Neither did Alexander's averment that, in his expert opinion, there was a high concentration of mold in the SUV that made him sick create an issue to be resolved by the jury. In his response to Request No. 12, Alexander had admitted that he did not have a measurement of the alleged concentration or level of mold in the SUV before the parts and carpet were removed, which would have been the period of time during which he developed his symptoms. Once Alexander made this admission, he was bound by it. *See Gen. Motors Corp., Chevrolet Motor Div. v. Aetna Cas. & Sur. Co.*, 573 N.E.2d 885, 888 (Ind. 1991) (observing that matters admitted pursuant a Trial Rule 36(B) requests for admissions are conclusively established). By averring that there was a high concentration of mold in his SUV which made him ill, Alexander offered a measurement of the concentration or level of mold in the SUV prior to the removal of the parts and carpet, a measurement which had already been

conclusively established did not exist. After Alexander admitted that the measurement did not exist, there was nothing remaining for the jury to resolve regarding that fact. In addition, as already noted, Alexander could not create a genuine issue of material fact by contradicting himself. *See King*, 804 N.E.2d at 825.

[23] Alexander also averred in the Affidavit that he did not experience symptoms before Meineke worked on his SUV, he did have symptoms after Meineke worked on the SUV, and that, after having the air conditioning repaired by the dealership and having the parts and carpet removed, his symptoms did not progress. Alexander argues that this circumstantial evidence created a factual issue on the element of causation, but this is precisely the type of opinion based on a purely temporal relationship between an event and a subsequent medical condition which this court has found to be inadequate to show causation. *See Hannan v. Pest Control Servs., Inc.*, 734 N.E.2d 674, 682 (Ind. Ct. App. 2000) (holding that Hannan's causation experts' testimony did not establish causation where it was apparent they relied "on a mere temporal coincidence of the pesticide application and the Hannans' alleged and self-reported illness."), *trans. denied*.

[24] Alexander directs our attention to the trial court's instructions to the jury that he contends indicate that the jury's verdict in his favor was not based on speculation, and he argues that we should not reverse the trial court's denial of partial summary judgment because the matter had already proceeded to trial. However, the trial court's instructions to the jury have no relevance to our

consideration of summary judgment proceedings, and it has long been the rule in Indiana that parties are allowed to appeal the denial of summary judgment, even after a trial on the merits as taken place. *See WESCO Distrib., Inc. v. ArcelorMittal Ind. Harbor LLC*, 23 N.E.3d 682, 696 (Ind. Ct. App. 2014) ("[T]he denial of a motion for summary judgment is reviewable on appeal even following a trial on the merits."), *trans. dismissed*; *see also Keith v. Mendus*, 661 N.E.2d 26, 35 (Ind. Ct. App. 1996) (collecting cases).

[25] Meineke made the required *prima facie* showing negating the element of causation in Alexander's claim which Alexander did not rebut with evidence showing that a genuine issue of material fact remained for resolution by the jury. Accordingly, the trial court erred when it denied Meineke's motion for partial summary judgment. We reverse the denial of partial summary judgment and enter summary judgment for Meineke on Alexander's personal injury claims. The effect of our decision is to vacate the portion of the jury's verdict and damages award relating to Alexander's personal injury claims. It is unclear from the record before us how the jury's damages award was apportioned between Alexander's personal injury and property damage claims. Therefore, we remand for entry of a revised damages award consistent with this opinion. In addition, our resolution of this issue renders it unnecessary for us to consider the issue of the timing of trial court's ruling on Meineke's motion to strike, and, in the interests of judicial economy, we do not address it.

# CROSS-APPEAL

[26] On cross-appeal, Alexander argues that Indiana Trial Rule 56(E) mandates the filing of a motion to correct error before appealing the denial of a summary judgment motion and that Meineke's failure to pursue a motion to correct error was fatal to its appeal. Alexander, therefore, urges us to dismiss Meineke's appeal. Resolution of this issue will necessitate our examination and interpretation of the Trial Rules, which are interpreted according to rules of statutory construction. *Lutheran Health Network of Ind., LLC v. Bauer*, 139 N.E.3d 269, 281 (Ind. Ct. App. 2019).

[27] Trial Rule 56(E) provides in relevant part that a "[d]enial of summary judgment may be challenged by a motion to correct errors after a final judgment or order is entered." Although recognizing that the word 'may' normally indicates that an action is permissive and not mandatory, Alexander, argues that according to the rules of statutory construction,

> where, from a consideration of the entire statute, and its nature and object, it appears that the intent of the legislature was to impose a positive duty rather than a discretionary power, the word "may" will be held to be mandatory.

(Cross-Appellant Br. p. 19) (citing 26 Ind. Law Encyc. Statutes § 66). Therefore, Alexander's argument continues, because motions to correct error were a prerequisite to appeal at the time the Trial Rules were adopted, the use of the word 'may' in T.R 56(E) should be construed as meaning that motions to correct error are mandatory to perfect an appeal.

[28]     We disagree.  T.R. 59(A) provides that a motion to correct error is not a prerequisite for appeal, except when a party seeks to address newly discovered evidence or a claim that a jury's verdict is excessive or inadequate.  Neither of those circumstances is implicated by this case.  T.R. 59(A) also provides that "[a]ll other issues and grounds for appeal appropriately preserved during trial may be initially addressed in the appellate brief."  We are obliged by the rules of statutory construction to read statutes concerning the same subject matter together in a manner that harmonizes them and gives effect to each.  *Peoples State Bank v. Benton Tp. of Monroe Cty.*, 28 N.E.3d 317, 323 (Ind. Ct. App. 2015). Accepting Alexander's interpretation of T.R. 56(E) would deprive T.R. 59(A) of its effect.  An interpretation that harmonizes both Rules and gives effect to each is that a motion to correct error is not required before pursuing an appeal of the denial of a motion for summary judgment.  We accept the latter interpretation and conclude that Meineke was not required to file a motion to correct error prior to filing the instant appeal.  Accordingly, we deny Alexander's cross-appeal.

## CONCLUSION

[29]     Based on the foregoing, we conclude that no genuine issue of fact existed precluding partial summary judgment in favor of Meineke on Alexander's personal injury claims.  We also conclude that Meineke was not required to file a motion to correct error prior to initiating the instant appeal.

[30]     Reversed, summary judgment entered for Meineke, and remanded for entry of damages consistent with this opinion.  Cross-appeal denied.

Mathias, J. and Tavitas, J. concur