**STATE of Indiana, Appellant–Plaintiff,**

**v.**

**William R. WHITNEY, Appellee–Defendant.**

**No. 12A04–0707–CR–401.**

Court of Appeals of Indiana.

June 30, 2008.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Randy J. Williams, Ball, Eggleston, P.C., Lafayette, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

The State of Indiana appeals the grant of William R. Whitney's motion to suppress evidence of Whitney's intoxication. We reverse and remand.

### FACTS AND PROCEDURAL HISTORY

About 12:30 a.m. on January 17, 2006, Deputy Sheriff Jared Blacker was on patrol when he noticed a vehicle with a single bright headlight approaching. With his radar, he determined the vehicle was traveling seventy miles per hour in a fifty-five mile-per-hour zone. He stopped Whitney, who was driving a motorcycle. Whitney claimed he did not realize he was speeding. When Whitney spoke, Deputy Blacker "thought [he] could smell an odor of an alcoholic beverage coming from him." (Tr. at 7.) Whitney denied drinking alcohol. Then, according to Deputy Blacker:

> I uh due to the motorcycle involved, I wanted to make sure that I wasn't getting an odor from the motorcycle as opposed to him but it was coming from that area. So I decided to step [sic] jump to the step of a portable breath test ["PBT"] to insure that the alcohol odor I was getting was from from [sic] the uh the operator of the vehicle.

*(Id.)* [1] The PBT indicated Whitney's breath alcohol level was .13%. Deputy Blacker had Whitney perform a number of field sobriety tests, including the horizontal gaze nystagmus test, the one leg stand test, and the walk and turn. Whitney had difficulty performing all three. While conducting the horizontal gaze nystagmus test, Deputy Blacker noticed Whitney's eyes were bloodshot. Deputy Blacker took Whitney to a police station for a standardized breath test, which indicated Whitney's alcohol level was .11%.

The State charged Whitney with "operat[ing] a vehicle while intoxicated in such a manner that a person was endangered," a Class D felony,[2] and "operat[ing] a vehicle with an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per 210 liters of said defendant's breath," a Class D felony.[3] Whitney filed a motion to suppress the PBT results and all evidence gathered thereafter because Deputy Blacker had no probable cause to perform the PBT. After a hearing, the trial court granted Whitney's motion to suppress:

> Defendant was stopped for speeding. Defendant was then given a PBT before the officer had any articulable fact(s) to authorize this test being offered or administered. To decide otherwise would permit officers to offer/administer PBTs whenever a vehicle was stopped for any infraction, with no indication of alcohol whatsoever. This simply would be overgeneralized in both application and result. Even the officer who stopped the defendant acknowledges that this was an extremely unusual situation where he did not first administer Field Sobriety Tests.

Defense argues there must be probable cause to offer a PBT, relying upon *Schmidt v. State* 816 N.E.2d 925, 943 (Ind.Ct.App.2005.): "the only significant difference between field sobriety tests and breath tests is that unlike field sobriety tests, breath tests require probable cause to administer." Defense asserts that the PBT is a chemical test, being "an analysis of breath to determine alcohol presence" as defined by I.C. 9–13–2–22. Officers "cannot offer a breath test to a suspect, and the suspect cannot consent or refuse the test, until after the officer had probable cause" to believe an alcohol crime is at issue. *Datzek v. State* 838 N.E.2d 1149, 1160 (Ind.Ct.App.2006.)

The State contends that a PBT is a Field Sobriety Test and that the above cases are distinguishable as they relate to Intoxilyzer cases.

PBTs are somewhat of a hybrid as they are generally used in connection with traditional Field Sobriety Tests but are not thereafter admissible in court. PBTs are often used to exclude individuals from the necessity of taking an Intoxilyzer which assist individuals in limiting the extent of their delay. In the facts of this case however, the PBT should not [have] been offered, and the subsequent testing and results were fruit of the poisonous tree and, as such, are suppressed.

(App. at 81) (errors in original).

## DISCUSSION AND DECISION

■ We may not reverse the grant of Whitney's motion to suppress unless "the

---

1. On cross-examination, defense counsel mentioned Whitney had been wearing leather riding gear. Deputy Blacker volunteered: "You said leathers. That did remind me that that was part of what I thought I was smelling also." (Tr. at 26.)

2. Ind.Code § 9–30–5–2(a) & (b).

3. Ind.Code § 9–30–5–1.

evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court." *State v. Lefevers,* 844 N.E.2d 508, 512 (Ind.Ct.App.2006), *trans. denied* 855 N.E.2d 1008 (Ind.2006). We may not judge the credibility of the witnesses or reweigh the evidence. *Id.*

Whitney argues Deputy Blacker needed probable cause to offer a PBT. The State asserts Deputy Blacker did not need probable cause because "neither statute [nor] case law requires the existence of probable cause before a [PBT] can be offered." (Appellant's Br. at 4.) Although the State's analysis rests on a faulty premise,[4] our statutory scheme leads us to the conclusion suggested by the State.

When construing statutes, our primary goal is to determine and give effect to legislative intent. *State v. Oddi–Smith,* 878 N.E.2d 1245, 1248 (Ind.2008). When two statutes address the same subject matter, we strive to harmonize them whenever possible. *Saintignon v. State,* 749 N.E.2d 1134, 1137 (Ind.2001). If statutes regarding the same subject cannot be harmonized, we give priority to "detailed" statutes over "general" statutes. *Duren v. State,* 720 N.E.2d 1198, 1203 (Ind.Ct.App. 1999). We presume the legislature knows the existing statutes when it adopts new statutes. *Id.* Penal statutes must be strictly construed against the State. *Smith v. State,* 867 N.E.2d 1286, 1288 (Ind. 2007).

Public Law 2–1991 defined separately "portable breath test" and "chemical test." A "chemical test" is "an analysis of a person's blood, breath, urine, or other bodily substance for the determination of the presence of alcohol, a controlled substance or its metabolite, or a drug or its metabolite." Ind.Code § 9–13–2–22. A portable breath test is "a hand held apparatus that measures the alcohol concentration in a breath sample delivered by a person into the mouthpiece of the apparatus." Ind. Code § 9–30–7–1(1).

Several Indiana Code Sections suggest our General Assembly intended portable breath tests and chemical tests to be mutually exclusive categories. For example, Ind.Code § 9–30–7–2 provides:

> A person who operates a vehicle impliedly consents to submit to the *portable breath test or chemical test* under this chapter as a condition of operating a vehicle in Indiana. A person must submit to each *portable breath test or chemical test* offered by a law enforcement officer under this chapter to comply with this chapter.

(Emphases added.) If our legislature considered PBTs to be just another form of chemical test, there would have been no reason to list "portable breath test" as an alternative to "chemical test." *See also* Ind.Code § 9–30–7–3(b), (c); Ind.Code § 9–30–7–5(a) ("A person who refuses to submit to a *portable breath test or chemical test* offered under this chapter commits a Class C infraction.") (emphasis added).

Ind.Code § 9–30–7–3(a) suggests our legislature intended PBTs to be a screening device that could eliminate the need to conduct a chemical test:

> A law enforcement officer shall offer a portable breath test or chemical test to any person who the officer has reason to believe operated a vehicle that was in-

4. The State concedes a PBT is a "chemical test" under Ind.Code § 9–13–2–22, (*see* Appellant's Br. at 5), but invites us to distinguish PBTs as a special kind of "chemical test." Neither the State nor the Appellee acknowledges Ind.Code § 9–30–7–1, which defines PBTs. Despite the State's erroneous concession, "we are nonetheless duty bound to review the facts and apply the law correctly." *Gardner v. State,* 591 N.E.2d 592, 593 (Ind.Ct. App.1992).

volved in a fatal accident or an accident involving serious bodily injury.

If:

(1) the results of a portable breath test indicate the presence of alcohol;

(2) the results of a portable breath test do not indicate the presence of alcohol but the law enforcement officer has probable cause to believe the person is under the influence of a controlled substance or another drug; or

(3) the person refuses to submit to a portable breath test; the law enforcement officer shall offer a chemical test to the person.

In accordance therewith, an officer can offer a PBT or chemical test if the officer has "reason to believe" a person was the driver of a vehicle involved in a crash involving serious bodily injury or death. However, if the PBT is negative, an officer cannot offer a chemical test unless the officer has "probable cause to believe the person is under the influence." *Id.*

■ Other statutes explain when chemical breath tests will be admissible into evidence: "If a chemical test conducted under this chapter involves an analysis of breath, the test must comply with the requirements under IC 9–30–6–5." Ind. Code § 9–30–7–4(a). Ind.Code 9–30–6–5's foundational requirements for admission of chemical breath tests include a certified operator, certified equipment, and approved operation techniques. PBTs have never been subjected to those standards for test operators, equipment and administration and, therefore, tend to be inadmissible at trial. *See, e.g., Smith v. State,* 751

N.E.2d 280, 283 (Ind.Ct.App.2001) (PBT was uncertified by Department of Toxicology and therefore inadmissible at trial), *aff'd on reh'g* 755 N.E.2d 1150 (Ind.Ct. App.2001), *trans. denied* 761 N.E.2d 424 (Ind.2001); *Sharber v. State,* 750 N.E.2d 796, 798 (Ind.Ct.App.2001) (Officer testified his PBT did not meet any of the certification requirements and "was used only to confirm or deny the presence of alcohol in an individual.").

■ It appears our legislature intended to differentiate between chemical tests and PBTs. PBTs provide a simple method for a threshold determination whether a person has consumed alcohol. While PBT results are not admissible at trial, they can help officers determine whether to offer standardized chemical tests that are admissible to demonstrate intoxication. *See State v. Johnson,* 503 N.E.2d 431, 433 (Ind.Ct.App.1987) (PBT results admissible at suppression hearing to demonstrate probable cause; "[W]e see no difference in the officer's use of the [PBT] than in the use of manual dexterity tests such as the finger-to-nose test, to determine intoxication, the use of which tests are unquestioned."), *reh'g denied, trans. denied.* Because PBTs and chemical tests have different functions, we see no reason to require probable cause for PBTs.[5]

■ Nevertheless, we share the trial court's concern that such a holding may interpreted to "permit officers to offer/administer PBTs whenever a vehicle was stopped for any infraction, with no indication of alcohol whatsoever." (App. at 81.)

5. In *Schmidt v. State,* 816 N.E.2d 925, 943 (Ind.Ct.App.2004), *trans. denied* 831 N.E.2d 743 (Ind.2005), we said: "The only significant difference between field sobriety tests and breath tests is that unlike field sobriety tests, breath tests require probable cause to administer." That case, however, was concerned with the administration of "chemical breath tests," *id.,* which above we distinguished from PBTs. *See also Datzek v. State,* 838 N.E.2d 1149, 1158 (Ind.Ct.App.2005) (discussing probable cause requirement for offering chemical test), *reh'g denied, trans. denied,* 855 N.E.2d 1006 (Ind.2006).

Therefore, we explicitly hold PBTs may not be administered randomly:

> As a general rule automobile drivers are not shorn of their Fourth and Fourteenth Amendment protections when they leave their homes and enter their automobiles. Police Officers may only search an automobile or seize occupants upon obtaining a warrant or upon having probable cause to believe a crime has been committed or is being committed by occupants of the vehicle.
>
> An exception exists when the officer has a reasonable suspicion based upon specific and articulable facts, and rational inferences from those facts that the occupants are committing a crime or are about to commit a crime. In such a case the officer may briefly detain the occupants to conduct a limited "non-invasive" search such as a "pat down" for weapons, a license and registration check, or field sobriety tests.

*Snyder v. State,* 538 N.E.2d 961, 963 (Ind. Ct.App.1989), *trans. denied.* In accordance therewith, Deputy Blacker needed reasonable suspicion to offer a PBT to Whitney.[6]

We review the ultimate determination of reasonable suspicion *de novo,* and we must determine its existence "on a case-by-case basis by looking at the totality of the circumstances." *Lefevers,* 844 N.E.2d at 515. "Although reasonable suspicion requires more than inchoate and unparticularized hunches, it is a less demanding standard than probable cause and requires considerably less proof than that required to establish wrongdoing by a preponderance of the evidence." *Id.*

Deputy Blacker had reasonable suspicion. He stopped Whitney at 12:30 in the morning because Whitney was traveling fifteen miles per hour over the speed limit. When Whitney spoke, Deputy Blacker "thought [he] could smell an odor of an alcoholic beverage coming from him." (Tr. at 7.) Although Deputy Blacker was not positive the smell was alcohol, rather than leather or the motorcycle engine, his belief the smell might have been alcohol was sufficient to justify a brief detention to determine whether Whitney had consumed alcohol. Although Deputy Blacker testified he typically offered field sobriety tests prior to a PBT, we see nothing unreasonable or illegal about his reversing the order of those tests under these facts.[7]

*Johnson* is distinguishable. Deputy Blacker did not know whether the smell he detected was from Whitney's breath, the motorcycle, or the leather outfit Whitney was wearing. Neither was he sure the smell was alcohol. When an officer is uncertain whether a driver smells of alcohol, the fact the driver was exceeding the speed limit by fifteen miles per hour is not a circumstance "that would warrant a reasonable person to believe that the suspect has committed" driving while intoxicated. *Cf. id.* (where officer was certain driver smelled of alcohol).

---

**6.** The State asserts probable cause existed because Whitney was speeding and smelled of alcohol. Probable cause exists when "the officer has knowledge of facts and circumstances that would warrant a reasonable person to believe that the suspect has committed the criminal act in question." *Clark v. State,* 808 N.E.2d 1183, 1192 (Ind.2004). The State relies on *State v. Johnson,* 503 N.E.2d 431, 432 (Ind.Ct.App.1987), *reh'g denied, trans. denied,* wherein another panel of this court held: "When the officer stopped the speeding car, he noticed an odor of alcohol emanating from [the driver]. In our view, this alone was sufficient to give the officer probable cause to believe [the driver] had been driving while intoxicated and to justify offering the breathalyzer test pursuant to the Indiana consent law."

**7.** If the PBT had confirmed Whitney's claim that he had not consumed any alcohol, Deputy Blacker would have been without reasonable suspicion to offer field sobriety tests, because Whitney was not demonstrating any signs of intoxication aside from the alcohol smell.

Because Deputy Blacker had the reasonable suspicion to support a PBT, we reverse the grant of Whitney's motion to suppress and remand for further proceedings.

Reversed and remanded.

RILEY, J., and KIRSCH, J., concur.