Karamchand PAUL, Deovrat Singh, and Ibad Ansari, Appellants–Defendants,

v.

HOME BANK SB, Appellee–Plaintiff.

No. 55A01–1012–MF–635.

Court of Appeals of Indiana.

Aug. 8, 2011.

Richard B. Kaufman, Doninger Tuohy & Bailey LLP, Indianapolis, IN, Attorney for Appellants Karamchand Paul and Deovrat Singh.

James A. Knauer, Ryan B. Bowers, Kroger Gardis & Regas LLP, Indianapolis, IN, Attorneys for Appellant Ibad Ansari.

Kurt A. Webber, Kurt A. Webber, P.C., Carmel, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Here, we are confronted with whether the integration clause in the guaranty of one loan released and discharged the guaranty of another loan. Additionally, we are asked to determine whether a financial institution is required to advise a client through a commercial transaction or recommend that the client seek legal counsel.

Inasmuch as isolating one paragraph of one document in a multidocument, complex commercial transaction would defeat the intended effect of the loan agreements, we conclude that the guaranty of one loan did not integrate and, consequently, release the guarantors of liability under a different loan. Additionally, we decline to require financial institutions to counsel educated clients through an arm's length commercial transaction or suggest that they seek legal representation.

Appellants-defendants Dr. Karamchand Paul, Dr. Deovrat Singh, and Dr. Ibad Ansari (collectively, "the Appellants") appeal the trial court's grant of summary judgment in favor of appellee-plaintiff Home Bank SB (Home Bank) and its denial .of summary judgment in their favor. Finding no error, we affirm.

## FACTS

### *The Superior Loan*

The Appellants, all of whom are physicians, were hotel investors and were members of SS Development Martinsville, LLC, (SS) for this purpose. On June 21, 2006, SS obtained a commercial construction loan from Home Bank for $2,940,000 (Superior Loan). The loan number was 01–4000115–8, and the loan documents to memorialize and secure the Superior Loan included a loan agreement, promissory note, security agreement, assignment of leases and rents, and a real estate mortgage. The mortgage was recorded under 1–200607922 on June 22, 2006.

As additional collateral, the Appellants each signed an identical guaranty (Superior Guaranty) on November 9, 2006. The Superior Guaranty provided that "[u]pon a default by Borrower with regard to the Performance Liabilities, Bank shall have the right to demand performance by Guarantor of the Performance Liabilities." Appellant's App. p. 155, 162, 169.[1]

The Superior Guaranty stated in the general provisions that:

> The Loan Documents constitute the complete and exclusive statement of all agreements among Borrower, Bank, and Guarantor. The Loan Documents replace and supersede all prior written and oral agreements by and among Borrower, Bank, and Guarantor and no representation, warranty, condition, commitment, or other statement will have

---

1. We will cite to Dr. Paul's and Dr. Singh's Appendix throughout this opinion.

any force or effect whatsoever unless contained in the Loan Documents.

*Id.* at 159, 166, 173.

The Superior Guaranty also explained that it was to replace a previous guaranty executed on February 27, 2006, for $2,700,000 for loan number 01–4000104–1. The Superior Guaranty clarified that "Guarantor acknowledges that this Guaranty is being belatedly executed pursuant to an understanding had before the refinancing and as an inducement to Bank to make such refinancing available to Borrower." *Id.*

### The Subordinate Loan

Also on June 21, 2006, SS acquired a $300,000 line of credit from Home Bank identified by loan number 01–6000054–4 (Subordinate Loan). The Subordinate Loan documents included a promissory note, which stated that related documents incorporated a security agreement, mortgage, and guaranty, all dated on June 21, 2006. Indeed, the loan documents included a security agreement and a real estate mortgage, which was recorded on July 26, 2006, under I–200609801.

Like the Superior Loan, the Subordinate Loan was secured by a guaranty (Subordinate Guaranty) from each of the Appellants. Specifically, the Subordinate Guaranty stated that "[w]ithout limitation, this guaranty includes the following described debt(s): LINE OF CREDIT # 01–6000054–4 PLUS INTEREST AND ANY COSTS INCURRED ON SAID LINE OF CREDIT." Appellant's App. p. 217, 219, 221.

Paragraph 7 of the Subordinate Guaranty provides that:

The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged.

*Id.* at 218, 220, 222.

Paragraph 12 provides that:

The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

*Id.*

### Default Sheriff's Sale, Summary Judgment

At some point, SS defaulted on both loans, and on January 3, 2008, Home Bank filed a two-count complaint against SS and the Appellants.[2] Count I pertained to the Superior Loan and Count II pertained to the Subordinate Loan. Both Counts sought foreclosure, entry of judgment, and requested a sheriff's sale on the mortgaged property. Because the mortgaged property was not occupied "as any of the defendants' personal residence," Home Bank filed a motion for the appointment of a receiver, which was granted. *Id.* at 223.

On September 26, 2008, the trial court granted Home Bank's motion for summary judgment against SS and ordered a sheriff's sale of the mortgaged property. Additionally, the trial court's order permitted

---

**2.** The complaint also named other defendants who are not part of this appeal.

"Home Bank to bid for the Property and collateral, or any part thereof, with the amount of the respective judgments found owned by Home Bank," including $3,104,336.19 on the Superior Loan and $312,268.86 on the Subordinate Loan. *Id.* at 321–22.

On April 28, 2009, after the sheriff's sale satisfied only the judgment on the Superior Loan, Home Bank moved for summary judgment against the Appellants and other Subordinate Loan guarantors on their respective guaranties for the Subordinate Loan. In June 2009, the trial court granted the Appellants' request for an enlargement of time to respond to Home Bank's motion. On June 8, 2009, Dr. Paul and Dr. Singh requested a second enlargement of time, which was denied.

On June 26, 2009, Dr. Paul and Dr. Singh responded to Home Bank's motion, moved to strike portions of Home Bank's designation, including the complaint, sought summary judgment on their own behalf, and requested a hearing. On July 27, 2009, Dr. Ansari responded to Home Bank's motion by filing a cross-motion for summary judgment. Because the Appellants moved for summary judgment, the trial court granted Home Bank's motion for enlargement of time to respond.

On January 19, 2010, Dr. Paul and Dr. Singh filed three motions to strike, each pertaining to portions of their depositions that Home Bank had designated in its response. Following a hearing, the trial court granted, in part, Dr. Paul's and Dr. Singh's first and second motion, but denied the third. Additionally, the trial court failed to rule on the motion to strike the text of the complaint that had been filed with Dr. Paul's and Dr. Singh's response.

A hearing on all summary judgment motions was held on January 27, 2010. On November 24, 2010, the trial court entered findings of fact and conclusions of law in its order granting summary judgment in favor of Home Bank for $358,015.65 on the Subordinate Loan. The trial court denied Dr. Ansari's motion for summary judgment and concluded that "[n]one of the Subordinate Guarantors is entitled to summary judgment." *Id.* at 22. The Appellants now appeal.

## DISCUSSION AND DECISION

### I. Second Motion for Enlargement of Time

■ Although Dr. Paul's and Dr. Singh's response to Home Bank's motion for summary judgment did not contain a specific cross-motion, it did invoke Indiana Trial Rule 56(B), which states that when one party has filed a summary judgment motion, "the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party." Dr. Ansari did file a cross-motion for summary judgment. Accordingly, the trial court granted Home Bank's request for an enlargement to of time to respond to the Appellants' requests for summary judgment. In light of this ruling, Dr. Paul and Dr. Singh[3] contend that the trial court abused its discretion by denying their second motion for enlargement of time to respond to Home Bank's motion for summary judgment.

■ This Court reviews a trial court's denial of a motion for an enlargement of time for an abuse of discretion. *Coleman v. Charles Court, LLC,* 797 N.E.2d 775, 781 (Ind.Ct.App.2003). An abuse of dis-

---

3. Dr. Ansari did not seek a second enlargement of time to respond to Home Bank's motion for summary judgment.

cretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Id.*

Indiana Trial Rule 56(C) provides, in relevant part, that "[a]n adverse party shall have thirty (30) days after service of the [summary judgment] motion to serve a response and any opposing affidavits." In this case, the trial court interpreted Dr. Paul's and Dr. Singh's invocation of Trial Rule 56(B) as a motion for summary judgment, and we cannot conclude that the trial court erred in so doing. Furthermore, in light of this and Dr. Ansari's cross-motion for summary judgment, the trial court did not err by granting Home Bank's motion and denying Dr. Paul's and Dr. Singh's *second* motion for an enlargement of time.

Nevertheless, Dr. Paul and Dr. Singh argue that Home Bank was not only allowed to respond to their motions for summary judgment, but also allowed to raise new issues in its response. Inasmuch as the doctors admit that they were allowed to supplement the new issues with portions of their depositions, we cannot say that they were prejudiced, and this argument fails.

## II. Motions to Strike

■ The Appellants maintain that the trial court abused its discretion by failing to strike some of Home Bank's designations on which they had filed motions to strike. More particularly, the Appellants contend that the trial court erred by failing to rule upon their motion to strike filed with their response, which challenged the text of the complaint. Additionally, Dr. Paul and Dr. Singh argue that although their January 19, 2010, motions to strike were granted in significant part, the trial court erred by not striking a portion of Dr. Singh's August 11, 2009, deposition.

■ A trial court has broad discretion in granting or denying a motion to strike. *Coleman,* 797 N.E.2d at 786. Indeed, this Court will not reverse the trial court's decision unless prejudicial error is clearly shown. *Id.*

As for the text of the complaint, Home Bank subsequently designated evidence and an affidavit, confirming the factual assertions concerning default and the amount that was due. Appellant's App. p. 287, 293–98. Consequently, the Appellants have failed to clearly show prejudicial error on this basis.

■ Moving forward to Home Bank's designation, the following exchange occurred during Dr. Singh's deposition:

Q: Have you spoken with Dr. Paul?

A: I said we both are liable; that's what I know.

Q: You're both are liable in connection with this lawsuit?

A: Right.

MR. KAUFMAN: And I'll object and move to strike the answer as, as beyond the scope of the client's ability to answer it, beyond his expertise and the documents speak for themselves and calling for a legal conclusion.

*Id.* at 555.

Subsequently, Dr. Singh changed his answer to the second question to "We both have been sued" on his errata sheet. *Id.* at 601–602. Dr. Singh also moved to strike his answer to the first question, and although this motion was denied, the trial court did permit him to supplement Home Bank's designation with additional deposition testimony to give context to his answer. *Id.* at 619–21, 638. Under these circumstances and in light of our analysis below, Dr. Paul and Dr. Singh have failed to clearly show that they were prejudiced.

### III. Summary Judgment

Proceeding to the crux of this appeal, the Appellants argue that the trial court erred by granting summary judgment in favor of Home Bank and claim that they are entitled to summary judgment. Initially, we note that summary judgment is appropriate only where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Peterson v. First State Bank*, 737 N.E.2d 1226, 1230 (Ind.Ct.App.2000); Ind. Trial Rule 56(C). The burden is on the moving party to prove that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Id.* The entry of specific of findings of fact and conclusions of law does not alter this Court's standard of review, inasmuch as we are not bound by them and they merely aid our review. *Id.* at 1231.

The Superior Guaranty and the Subordinate Guaranty are the focal point of this dispute. This Court has recognized that a guaranty " 'is an agreement collateral to the debt itself' and represents a 'conditional promise' whereby the guarantor promises to pay only if the principal debtor fails to pay." *Keesling v. T.E.K. Partners, LLC*, 861 N.E.2d 1246, 1251 (Ind.Ct.App. 2007) (quoting 38 Am.Jur.2d *Guaranty* § 1 (1999)).

■■ Additionally, the rules governing contract interpretation generally apply to the interpretation of a guaranty contract. *Id.* More particularly, "[t]he terms of a guaranty should neither be so narrowly interpreted as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of liability fairly within its terms." *Id.*

■ Nevertheless, a guarantor is a favorite in the law and is not bound beyond the strict terms of the guaranty. *Goeke v. Merchants Nat'l Bank & Trust Co. of Indianapolis*, 467 N.E.2d 760, 769 (Ind.Ct.App.1984). Any ambiguities in the contract are to be construed against the party who prepared the document. *Id.*

■ As stated above, the Superior Loan was satisfied through a sheriff's sale; however, the Subordinate Loan remains unpaid. The Appellants argue that the Superior Guaranty contained an integration clause and that because the Superior Loan has been satisfied, they are not liable pursuant to the Subordinate Guaranty.

To support their contention, the Appellants rely on the following provision in the Superior Guaranty:

> The Loan Documents constitute the complete and exclusive statement of all agreements among Borrower, Bank, and Guarantor. The Loan Documents replace and supersede all prior written and oral agreements by and among Borrower, Bank, and Guarantor and no representation, warranty, condition, commitment, or other statement will have any force or effect whatsoever unless contained in the Loan Documents.

Appellant's App. p. 159, 166, 173.

As stated above, the Superior Guaranty, which contained only the number of the Superior Loan, also explained that it was replacing a previous guaranty executed on February 27, 2006, for a $2,700,000 loan. The language expressed that the Superior Guaranty was to "replace and supersede all prior written and oral agreements," *id.* at 159, was inserted because the Superior Loan was obtained by the Appellants to refinance another loan and was a commercial construction loan. Put another way, "all prior written and oral agreements," *id.*, included the outstanding February 2006 loan and any negotiations directly leading to the Superior Loan.

By contrast, the Subordinate Loan was a $300,000 commercial line of credit with a separate loan number. The Subordinate Loan documents included the Subordinate Guaranty, which noted its unique number. As stated above, Paragraph 7 of the Subordinate Guaranty provided that the Appellants remained liable for any deficiency after foreclosure. *Id.* at 218, 220, 222. And Paragraph 12 stated that the Appellants' liability "shall be cumulative" with all other liabilities to Home Bank. *Id.* And each loan was memorialized by its own set of loan documents. Thus, the Superior Loan and the Subordinate Loan were two entirely separate contractual transactions, and the integration clause in the Superior Guaranty integrated only those agreements that were part of the negotiations directly leading to the Superior Loan. *See Hinkel v. Sataria Distrib. & Packaging, Inc.*, 920 N.E.2d 766, 769, 770 (Ind.Ct.App. 2010) (discussing that when determining whether an agreement is integrated, a court should consider whether prior agreements " 'relate to the same subject matter and are so interrelated that both would be executed at the same time and in the same contract, the scope of the subsidiary agreement must be taken to be covered by the writing' " (quoting *Steinke v. Sungard Fin. Sys., Inc.*, 121 F.3d 763, 770 (1st Cir. 1997))).

It is also noteworthy that the Appellants do not argue that the integration clause released the Subordinate Loan entirely even though it uses the broad term "Loan Documents." Appellant's App. p. 159. Indeed, no one appealed the summary judgment entered on behalf of Home Bank against SS on the Subordinate Loan.

The Appellants highlight the fact that the Superior Guaranty was not signed until November 9, 2006, and claim that this is further evidence that it replaced the Subordinate Guaranty, which was signed on June 21, 2006. This argument is unavailing, inasmuch as the Superior Guaranty contained an acknowledgement that it was belatedly executed, but had been previously agreed to so that Home Bank would refinance the February 2006 loan. *Id.* at 159, 166, 173. In other words, the Superior Guaranty was collateral only for the Superior Loan, and it was merely Home Bank's oversight that it was not signed until November 9, 2006. In any event, both loans were multidocument contractual transactions, and we decline the Appellants' invitation to isolate the paragraph of one document, which itself is multiple pages, to reach a conclusion that is contrary to the effect of the loan agreements.

 Notwithstanding this conclusion, the Appellants point out that they are not lawyers, and Home Bank failed to advise them as to the meaning of the Superior Guaranty. In essence, the Appellants argue that they thought that the Superior Guaranty released all previous guaranties and that Home Bank failed to advise them differently. This Court has recognized that:

> a business or 'arm's length' contractual relationship does not give rise to a fiduciary relationship. That is, the mere existence of a relationship between parties of bank and customer or depositor does not create a special relationship of trust and confidence. In the context of mortgagor/mortgagee relationship, mortgages do not transform a traditional debtor-creditor relationship into a fiduciary relationship absent an intent by the parties to do so. Absent special circumstances, a lender does not owe a fiduciary duty to a borrower.

*Wilson v. Lincoln Fed. Sav. Bank,* 790 N.E.2d 1042, 1046–47 (Ind.Ct.App.2003) (internal citations omitted). Special circumstances exist when one party has confidence in the other party and is " 'in a

position of inequality, dependence, weakness, or lack of knowledge.'" *Kruse v. Nat'l Bank of Indianapolis,* 815 N.E.2d 137, 148 (Ind.Ct.App.2004) (quoting *Paulson v. Centier Bank,* 704 N.E.2d 482, 490 (Ind.Ct.App.1998)). Additionally, it must be shown that the dominant party improperly influenced the weaker party to gain an "'unconscionable advantage.'" *Id.*

Here, it is undisputed that the Appellants are physicians and embarked upon a sophisticated business venture, namely hotel investment. Moreover, the Appellants cannot now complain because they failed to read the Superior Guaranty or seek the advice of legal counsel before signing the Superior Guaranty. *See Robert's Hair Designers, Inc. v. Pearson,* 780 N.E.2d 858, 869 (Ind.Ct.App.2002) (stating that "[u]nder Indiana law, a person is presumed to understand the documents which he or she signs and cannot be released from the terms of a contract due to his or her failure to read the documents"). Consequently, this argument fails, and the trial court did not err by granting Home Bank's motion for summary judgment and denying summary judgment in favor of the Appellants.

The judgment of the trial court is affirmed.

MAY, J., and BRADFORD, J., concur.