# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**SHERWOOD P. HILL**
**CLINTON E. BLANCK**
Maurer Rifkin & Hill, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**JAMES E. CARLBERG**
**JAMES P. MOLOY**
**NATHAN T. DANIELSON**
Bose McKinney & Evans, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

STEVEN WEINREB,                        )
                                       )
    Appellant-Defendant,        )
                                       )
        vs.               )    No. 49A04-1211-PL-587
                                       )
FANNIE MAE,                            )
                                       )
    Appellee-Plaintiff.         )

APPEAL FROM THE MARION CIRCUIT COURT
The Honorable Louis F. Rosenberg, Judge
Cause No. 49C01-1202-PL-6812

**July 16, 2013**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Steven Weinreb (Weinreb), appeals the trial court's partial grant of summary judgment and grant of a monetary award to Appellee-Plaintiff, Fannie Mae, Inc. (Fannie Mae).

We affirm.

## ISSUES

Weinreb raises eight issues for our review, three of which we find dispositive and which we consolidate as the following single issue: Whether the trial court erred when it found Weinreb personally liable based on a deficiency judgment.

On cross-appeal, Fannie Mae raises a single issue, which we restate as: Whether *res judicata* or collateral estoppel prevents Weinreb from challenging the trial court's summary judgment.

## FACTS AND PROCEDURAL HISTORY

Weinreb resides in New York and is engaged in the business of importing Spanish foods. For the last fifteen years, Weinreb has invested in real estate ventures, individually and with others. In 2006, Weinreb learned about an investment property in Indianapolis, the Strawbridge Green Apartments (Apartments). Weinreb and his business partners formed WK Strawbridge, LLC (Strawbridge LLC), a single purpose entity formed to acquire title to the Apartments. Financing for the acquisition was first obtained through a non-recourse bridge loan from RAIT Financial Trust. Permanent financing

2

was later sought from Arbor Commercial Funding, LLC (Arbor), which provided a commercial loan through Fannie Mae.

On June 16, 2008, Strawbridge LLC, through its "sole member" Shaul Kuperwasser, executed the "Multifamily Non-Recourse Fixed +1 Note," a promissory note (the Note), evidencing a loan by Arbor to Strawbridge LLC in the principal amount of $5,999,300, maturing in July 2018, with a fixed annual interest rate of 6.37% (the Loan) for the first nine years and with an adjustable interest rate thereafter. (Appellant's App. pp. 18, 31). Under the Note, the principal, the interest thereon, any late charges, the interest payable in the event of Strawbridge LLC's default, as well as a prepayment premium, constitute the "Indebtedness." (Appellant's App. p. 19). The Note constituted one part of the "Loan Documents," which include an "Acknowledgement and Agreement of Key Principal to Personal Liability for Exceptions to Non-Recourse Liability" (the Guaranty), a mortgage, assignment of rents, and security agreement (the Mortgage), as well as related loan documentation. (Appellant's App. p. 43). Contemporaneously with the execution of the Loan Documents, Arbor endorsed the Note and assigned the Mortgage and all Loan Documents to Fannie Mae, which is the current holder.

Though structured as a non-recourse loan, the Note contains carve-outs permitting full recourse liability for Strawbridge LLC under pre-determined circumstances, which include certain "Events of Default" by Strawbridge LLC. (Appellant's App. p. 68). In relevant part, Paragraph 9(c) provides that:

[Strawbridge] shall become personally liable to [Fannie Mae] for the repayment of all of the Indebtedness upon the occurrence of any of the following Events of Default:

[…]

(2) a Transfer that is an Event of Default under Section 21 of the [Mortgage].

(Appellant's App. p. 26).

Section 1(z) of the Mortgage defines a "Transfer" as "the granting, creating or attachment of a lien, encumbrance or security interest." (Appellant's App. p. 46). Section 21(a)(1) of the Mortgage specifies that "a Transfer of all or any part of the [Apartments] or any interest in the [Apartments]" constitutes an Event of Default and Section 16 of the Mortgage contains Strawbridge LLC's agreement that the same constitutes an Event of Default. (Appellant's App. p. 64). However, Section 21(b)(6) of the Mortgage provides that a lien against the Apartments "which is bonded off, released of record or otherwise remedied to [Fannie Mae's] satisfaction within 30 days of the date of creation" does not constitute an Event of Default. (Appellant's App. p. 65). Under the Guaranty, Weinreb, as "Key Principal" agreed to pay all of Strawbridge LLC's obligations under Paragraph 9 of the Note. (Appellant's App. p. 32).

If an Event of Default occurs, Paragraph 6 of the Note permits Fannie Mae to accelerate the Loan, thereby causing the outstanding Indebtedness to become immediately due and payable. In such case, Paragraph 10(a) of the Note provides in relevant part:

4

(2) Upon [Fannie Mae's] exercise of any right of acceleration under this Note, [Strawbridge LLC] shall pay to [Fannie Mae], in addition to the entire unpaid principal balance of this Note outstanding at the time of acceleration, (i) all accrued interest and all other sums due [Fannie Mae] under this Note and the other Loan Documents, and (ii) the prepayment premium calculated pursuant to Schedule A.

(Appellant's App. pp. 27-8). The prepayment premium represents an estimate "of the damages [Fannie Mae] will incur because of a prepayment." (Appellant's App. p. 28). Further,

(e) [Strawbridge LLC] recognizes that any prepayment of the unpaid principal balance of this Note, whether voluntary or involuntary or resulting from a default by [Strawbridge LLC], will result in [Fannie Mae's] incurring loss, including reinvestment loss, additional expense and frustration or impairment of [Fannie Mae's] ability to meet its commitments to third parties. [Strawbridge LLC] agrees to pay to [Fannie Mae] upon demand[,] damages for the detriment caused by any prepayment, and agrees that it is extremely difficult and impractical to ascertain the extent of such damages. [Strawbridge LLC] therefore acknowledges and agrees that the formula for calculating prepayment premiums set forth on Schedule A represents a reasonable estimate of the damages [Fannie Mae] will incur because of a prepayment.

(f) [Strawbridge LLC] further acknowledges that the prepayment premium provisions of this Note are a material part of the consideration for the [L]oan evidenced by this Note, and acknowledge that the terms of this Note are in other respects more favorable to [Strawbridge LLC] as a result of [Strawbridge LLC's] voluntary agreement to the prepayment premium provisions.

(Appellant's App. p. 28). Schedule A to the Note provides a "yield maintenance formula" for calculating the prepayment premium. (Appellant's App. p. 34).

Beginning in December 2009, mechanic's liens were filed against the Apartments: a mechanic's lien in the amount of $42,766 was filed on December 3, 2009; a second mechanic's lien in the amount of $44,105 was filed on May 25, 2010; and a third

mechanic's lien for $1,346.74 was filed on May 26, 2010. Beginning July 1, 2010, Strawbridge LLC failed to pay its monthly installments under the Note. On August 27, 2010, Fannie Mae sent Strawbridge LLC and Weinreb a demand letter for immediate payment of the loan installments, ordered Strawbridge LLC to remit tenant rental payments directly to Fannie Mae, and advised that a failure to pay amounted to a default under the Note. Two months later, on October 25, 2010, Fannie Mae sent a written demand to Strawbridge LLC and Weinreb demanding that the mechanic's liens be released and advising that failure to resolve the liens constituted a default under the Note. On November 24, 2010, Fannie sent another letter advising Strawbridge LLC and Weinreb of the failure to pay installments under the Note and demanding that all rents from the Apartments be paid to Fannie Mae. On December 13, 2010, a fourth mechanic's lien was filed in the amount of $19,364. The total amount of mechanic's liens filed was $72,287.12.

Litigation involving the lienholders, Strawbridge LLC, Arbor, and Fannie Mae ensued, with Fannie Mae asserting counter and cross-claims against various parties (Foreclosure Action). However, Fannie Mae erroneously added Weinreb to the caption and the trial court summarily ordered Weinreb's name removed. On July 20, 2011, Fannie Mae was awarded summary judgment *in rem* in the amount of $7,812,683.10, which included the prepayment premium of $1,474,992.49 (Foreclosure Judgment). The trial court ordered foreclosure, but found that "Fannie Mae's claims against [Weinreb] are not resolved by this judgment and may be pursued at a later date." (Appellant's App.

p. 99). On September 21, 2011, the Apartments were sold at a sheriff's sale, with Fannie Mae as the successful bidder, with a bid of $6,606,314.86, thereby leaving a deficiency of $1,806,557.34 plus interest and expenses (the Deficiency).

On February 21, 2012, Fannie Mae filed its Complaint against Weinreb for the Deficiency. On April 16, 2012, Weinreb filed his answer, denying the substantive allegations and raising a number of affirmative defenses including unconscionability. On June 11, 2012, Fannie Mae filed its motion for summary judgment. On October 17, 2012, a hearing was held. On October 23, 2012, the trial court issued a partial summary judgment in favor of Fannie Mae and against Weinreb in the amount of $1,806,557.34. The trial court concluded that the Guaranty made Weinreb personally liable for an Event of Default under the Note and Mortgage and that the attachment of mechanic's liens constituted an Event of Default. The trial court rejected Weinreb's arguments that he had not read the Guaranty prior to signing it and that the complexity of such documents was overwhelming. Instead, the trial court concluded:

> However convoluted that agreement may have seemed to a non-lawyer, Weinreb was obliged to read the document or at a minimum seek legal advice. Furthermore, [Weinreb has] not designated evidence showing that [he] was inexperienced in transactions of this nature, nor that Fannie Mae had a fiduciary obligation to point out the possible risks of the [Guaranty] to Weinreb personally. And there is certainly no designated evidence that Fannie Mae misled Weinreb as to the meaning of the [Guaranty]. There is thus no material issue of fact as to whether the [Guaranty] was unconscionable.

7

(Appellant's App. p. 267).[1]

Weinreb now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

CROSS-APPEAL

As a threshold matter, we address Fannie Mae's argument that the doctrine of *res judicata* and collateral estoppel preclude Weinreb from contesting the elements of or his liability for the Deficiency. The doctrine of *res judicata* bars the litigation of a claim after a final judgment has been rendered in a prior action involving the same claim between the same parties or their privies. *MicroVote General Corp. v. Indiana Election Comm'n*, 924 N.E.2d 184, 191 (Ind. Ct. App. 2010). In other words, *res judicata* prevents the repetitious litigation of that which is essentially the same dispute. *In re L.B.*, 889 N.E.2d 326, 333 (Ind. Ct. App. 2008). *Res judicata* is divided into two branches: claim preclusion and issue preclusion. *See id*. Claim preclusion applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. *Id*. Issue preclusion, also referred to as collateral estoppel, bars the subsequent relitigation of the same fact or issue where the fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action. *Id*.

A. *Claim Preclusion*

---

[1] The trial court partially denied summary judgment to Fannie Mae regarding security deposits from the Apartment. The parties do not appeal this issue.

Asserting that claim preclusion applies, Fannie Mae argues that Weinreb cannot contest the amount of or his liability for the Deficiency resulting from the Foreclosure Judgment. Specifically, Fannie Mae contends that the Foreclosure Judgment was rendered by a court of competent jurisdiction, was on the merits, and Weinreb was a party or a privy to the Foreclosure Action.

When, as here, a party argues that the claim preclusion component of *res judicata* applies, four factors must be present, namely: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between parties to the present suit or their privies. *Id.* Fannie Mae argues and Weinreb does not dispute that three of the above requirements are met here. Instead, Weinreb argues that he was not a party to the Foreclosure Action nor was he in privity with any party named therein.

Fannie Mae points to Weinreb's connection with Strawbridge LLC to argue that Weinreb was a party. Fannie Mae asserts that the Restatement (Second) of Judgments provides support for concluding that Weinreb is a party to the Foreclosure Action:

> If [a] corporation is closely held, in that one or a few persons hold substantially the entire ownership in it, the judgment in an action by or against the corporation or the holder of ownership in it is conclusive upon the other of them as to issues determined therein as follows:
>
> (a) The judgment in an action by or against the corporation is conclusive upon the holder of its ownership if he actively participated in the action on behalf of the corporation, unless his interests and those of the

9

corporation are so different that he should have opportunity to relitigate the issue[.]

Restatement (Second) of Judgments § 59(a).

Examining Weinreb's affidavit, we note that Weinreb states that he was "one of six or seven members in Strawbridge LLC," but that his role in the transaction was to be "a principal investor" who did not negotiate the financing. (Appellant's App. p. 211). The Note is signed by Shaul Kuperwasser, as the sole member of WK SG Investor LLC, which apparently was also a member of Strawbridge LLC. Fannie Mae's designated evidentiary materials contain an email from Julian Blumenthal of WK Holdings, who responded to Arbor's request for the Apartment's rent roll. Notably, the parties did not designate additional pieces of evidence that would have shown the extent of Weinreb's membership in Strawbridge LLC.

Fannie Mae admits that "[t]he Foreclosure Judgment noted that Fannie Mae's claims against Weinreb were not resolved by the Foreclosure Judgment and could be pursued at a later date." (Appellee's Br. p. 2). Although Fannie Mae listed Weinreb in the caption of its summary judgment motion in the Foreclosure Action, Weinreb moved the trial court to remove his name alleging that he had not been served or named as a counterclaim or cross-claim defendant, nor had Fannie Mae sought to add him. The trial court granted his motion. Further, the trial court stated in the Foreclosure Judgment that "Fannie Mae's claims against [Weinreb] are not resolved by this judgment and may be pursued at a later date." (Appellant's App. p. 99). Based on the foregoing, we do not agree that Fannie Mae has shown that Weinreb was a party to the Foreclosure Action.

10

Fannie Mae also asserts that Weinreb was a privy to the prior action. The term privity describes the relationship between persons who are parties to an action and those who are not parties to an action but whose interests in the action are such that they may nevertheless be bound by the judgment in that action. *MicroVote*, 924 N.E.2d at 196. Whereas a "party" is one who is directly interested in the subject matter and has a right to make a defense or control the proceedings, a "privy" is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment. *See id.* The term includes those who control an action, though not a party to it, and those whose interests are represented by a party to the action. *Id.* As such, an entity does not have to control a prior action, or be a party to a prior action, for privity to exist. *Id.* Therefore, in determining the parties for *res judicata* purposes, this court looks beyond the nominal parties and treats those whose interest are involved as the real parties. *Id.*

Fannie Mae argues that Strawbridge LLC represented Weinreb's interests in the Foreclosure Action. However, Weinreb was expressly excluded from the Foreclosure Action by court order and the trial court expressly left claims against Weinreb out of the Foreclosure Judgment. Weinreb's affidavit alleges that he did not know about the mechanic's liens until it was too late to do anything about them. Accordingly, we conclude that Fannie Mae has not shown that Weinreb was in privity with Strawbridge LLC in the Foreclosure Action. Therefore, claim preclusion does not bar Weinreb from contesting his liability for the Deficiency.

B. *Collateral Estoppel*

11

Likewise, we conclude that collateral estoppel does not preclude Weinreb from contesting his liability for the Deficiency.  Collateral estoppel bars litigation of an issue necessarily adjudicated in a former suit.  *MicroVote*, 924 N.E.2d at 197.  Even if the two actions are not on identical claims, collateral estoppel deems that the former adjudication will be conclusive in the subsequent action.  *See id*.  Here, Fannie Mae asserts offensive collateral estoppel since it seeks to foreclose Weinreb from re-litigating the elements of the Foreclosure Judgment.  Determining the appropriateness of offensive collateral estoppel involves two considerations:  "1) whether the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue; and 2) whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel."  *Eichenberger v. Eichenberger*, 743 N.E.2d 370, 375 (Ind. Ct. App. 2001).  If the two elements are fulfilled, then the court may apply collateral estoppel to prevent relitigation of the same issue.  *Id*.

The trial court removed Weinreb's name from the caption in the Foreclosure Action and expressly acknowledged that Fannie Mae could pursue its claims against him.  Thus, Weinreb did not have a full and fair opportunity to litigate the enforceability of the Note or his Guaranty.  Accordingly, offensive collateral estoppel does not apply here.

APPEAL

On appeal, Weinreb challenges the trial court's partial summary judgment in favor of Fannie Mae.  Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law.  Ind.

12

Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id*.

We observe that in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id*. However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id*.

The trial court found Weinreb liable under the Guaranty which in turn exposed him to personal liability for the Deficiency. Weinreb first argues that the Loan Documents are extrinsically ambiguous making summary judgment inappropriate. Next, Weinreb argues that the non-recourse carve-outs and the prepayment premium are unenforceable. Finally, Weinreb contends that the Loan Documents constitute an unconscionable agreement.

A. *Ambiguity*

13

In asserting that summary judgment was inappropriate because the Loan Documents are extrinsically ambiguous, Weinreb argues that extrinsic evidence in the form of his understanding or lack thereof should have been considered by the trial court. Specifically, he contends that anyone who understood the context of the transaction "would realize that the contract language could not mean what an untutored reader would suppose it meant, namely, that Weinreb would be liable for full recourse […] when only $72,287.12 in [m]echanic's [l]iens attached to the [Apartment]." (Appellant's Br. pp. 21-22).

The interpretation of a contract is controlled by the intent of the parties as expressed by the clear language of the contract. *City of Jeffersonville v. Environmental Management Corp.*, 954 N.E.2d 1000, 1008 (Ind. Ct. App. 2011). Clear, plain, and unambiguous contract terms are conclusive of the parties' intent, and a court will not construe the contract or consider extrinsic evidence, but will merely apply the contractual provisions as they are written. *Id.* Where, as is the case with the Loan Documents, when two or more instruments are executed at the same time relate to the same transaction, they may be construed together. *See PNC Bank, Nat'l Ass'n v. LA Development, Inc.*, 973 N.E.2d 1131, 1136 (Ind. Ct. App. 2012), *trans. denied.* However, "[i]f the terms of a written contract are ambiguous, it is the responsibility of the trier-of-fact to ascertain the facts necessary to construe the contract." *Newnam Mfg., Inc. v. Transcontinental Ins. Co.*, 871 N.E.2d 396, 401 (Ind. Ct. App. 2007).

Weinreb raises no issue with regard to the language of the Note, Guaranty, or Mortgage; rather, he argues that the implementation of those agreements results in a latent ambiguity. If an agreement is ambiguous, we determine whether the ambiguity is patent or latent. *Eckart v. Davis*, 631 N.E.2d 494, 497 (Ind. Ct. App. 1994). A patent ambiguity is apparent on the face of the instrument and arises from an inconsistency or inherent uncertainty of language used so that it either conveys no definite meaning or a confused meaning. *Id*. Extrinsic evidence is not admissible to explain or remove a patent ambiguity. *Id*. Conversely, a latent ambiguity does not emerge until one attempts to implement the words as directed in the instrument. *Id*. Extrinsic evidence is admissible to explain a latent ambiguity. *Id*. at 498.

Here, no ambiguity exists and we therefore decline to consider the extrinsic evidence offered by Weinreb. The Note is unambiguous; Paragraph 9(c) makes the Loan full recourse in the event of "a Transfer that is an Event of Default under Section 21 of the [Mortgage]," thereby entitling Fannie Mae to certain amounts, including the prepayment premium. (Appellant's App. p. 26). The Mortgage is unambiguous; "the granting, creating or attachment of a lien […] (whether voluntary, involuntary or by operation of law)" is a Transfer under Section 1(z). (Appellant's App. p. 46). Such Transfer constitutes a default under Section 21(a) of the Mortgage if the lien is not removed, released, or otherwise remedied to Fannie Mae's satisfaction. The Guaranty is unambiguous; as Key Principal, Weinreb "absolutely, unconditionally and irrevocably agree[d] to pay to [Fannie Mae], on demand, all amounts for which [Strawbridge LLC] is

15

personally liable under Paragraph 9 of [the Note]." (Appellant's App. p. 32). Thus, the plain and ordinary meaning of the Guaranty is that Weinreb is personally liable.

Nor does any ambiguity arise upon implementation. Weinreb argues that no party would intend personal liability stretching into a million dollars based upon mechanic's liens of approximately $72,000. Generally, parties are obligated to know the terms of the agreement they are signing, and cannot avoid their obligations under the agreement due to a failure to read it. *Park 100 Investors, Inc. v. Kartes*, 650 N.E.2d 347, 349 (Ind. Ct. App. 1995). A failure to read does not equate with an ambiguity arising from the implementation of the clear terms of the Note, Mortgage, and Guaranty. Accordingly, we affirm the trial court's decision on this issue.

B. *Non-Recourse Carve-Outs and Prepayment Premium*

Weinreb next challenges the enforceability of the prepayment premium, analyzing it as a liquidated damages provision. A liquidated damages clause provides for the forfeiture of a stated sum of money upon a breach of contract without proof of damages. *Dean V. Kruse Foundation, Inc. v. Gates*, 973 N.E.2d 583, 591 (Ind. Ct. App. 2012), *trans. denied*. Liquidated damages clauses are generally enforceable where the nature of the agreement is such that damages for breach would be uncertain, difficult, or impossible to ascertain. *Id*. While liquidated damages clauses are ordinarily enforceable, contractual provisions constituting penalties are not. *Id*. The distinction between a penalty provision and one for liquidated damages is that a penalty is imposed to secure performance of the contract and liquidated damages are to be paid in lieu of performance.

16

*Id*. To determine whether a stipulated sum payable upon breach of contract constitutes liquidated damages or a penalty, the facts, the intention of the parties, and the reasonableness of the stipulation under the circumstances of the case are all to be considered. *Id*. The use of the words "damages," "penalty," "forfeiture," and "liquidated damages" are not conclusive, but should be considered in connection with other provisions in the contract to determine the nature of the provisions. *Id*. at 591-92. However, despite the plethora of abstract tests and criteria for the determination of whether a provision is one for a penalty or liquidated damages, there are no hard and fast guidelines to follow. *Id*. at 592.

As a result of the unresolved mechanic's liens, the Note's non-recourse carve out provisions entitled Fannie Mae to hold Strawbridge LLC and therefore Weinreb as guarantor, liable for the full amount of the Indebtedness, including the prepayment premium. Arguing that Indiana law has not yet construed the effect of non-recourse carve-out provisions or prepayment premiums, the parties cite a number of cases from other jurisdictions analyzing similar contractual provisions. The non-recourse carve-out provisions in a promissory note transform what is otherwise a non-recourse loan into a full recourse loan, "enabling the creditor to look beyond simply the mortgaged property for repayment of the loan." *CFSB 2001-CP-4 Princeton Park Corporate Center, LLC v. SB Rental I, LLC*, 980 A.2d 1, 5 (N.J. Super.A.D. 2009). These provisions do not constitute liquidated damages provisions because they only "define the terms and

17

conditions of personal liability" and permit "the lender to recover only damages actually sustained." *Id.*

Similarly, we conclude that the non-recourse carve-out provisions in the Note, standing alone, do not constitute a liquidated damages provision because they define when Strawbridge LLC becomes "personally liable to [Fannie Mae] for the repayment of all of the Indebtedness upon the occurrence of […] a Transfer that is an Event of Default under Section 21 of the [Mortgage]." (Appellant's App. p. 26). Thus, the mechanic's liens, when unresolved to Fannie Mae's satisfaction, served as a trigger for personal liability and are therefore not relevant to determining the extent of Fannie Mae's damages resulting from Strawbridge LLC's default. *See G3-Purves Street, LLC v. Thomson Purves, LLC*, 953 N.Y.S.2d 109, 113-14 (N.Y. App. Div. 2012).

Next, we turn our attention to the prepayment premium itself. The Note specifies when the Loan becomes full recourse, Strawbridge LLC is liable for "repayment of all of the Indebtedness." (Appellant's App. p. 26). Indebtedness under the Note includes not only the outstanding principal, interest, late charges, default interest, and advances, but also the prepayment premium.

We conclude that the prepayment premium here constitutes a liquidated damages provision. Prepayment of a loan deprives the lender "of the interest it was to receive as consideration for making the loans." *McCae Mgmt. Corp. v. Merchants Nat. Bank and Trust Co. of Indianapolis*, 553 N.E.2d 884, 888 (Ind. Ct. App. 1990), *trans. denied.* Thus, prepayment premiums "insure[] the lender against loss of his bargain if interest

18

rates decline." *Id*. (quotation omitted). Paragraph 10(e) of the Note recites that prepayment by Strawbridge LLC subjects Fannie Mae to loss, whether its reinvestment loss or its ability to meet third party commitments in order for it to provide financing to Strawbridge LLC. The provision also acknowledges that "it is extremely difficult and impractical to ascertain the extent of such damages." (Appellant's App. p. 28). Since Strawbridge LLC would have had to pay the prepayment premium whether voluntarily or involuntarily (*i.e.*, based upon its default), the prepayment premium is a forecast of Fannie Mae's damages in the event of prepayment, rather than a penalty intended to secure Strawbridge LLC's performance. Mindful that we may review the facts of the transaction when analyzing liquidated damages clauses, it is important that Strawbridge LLC and Weinreb's refusal to deal with the mechanic's liens, despite Fannie Mae's insistence that they do so, constituted the default that permitted Fannie Mae to accelerate the Loan. *See Gershin v. Demming*, 685 N.E.2d 1125, 1128 (Ind. Ct. App. 1997), *trans. denied*. Based on the foregoing, we conclude that the prepayment premium here constitutes a liquidated damages provision.

Weinreb makes essentially two arguments contesting the enforceability of the prepayment premium. First, he contests the proportion of the prepayment premium to the amount of outstanding principal since the prepayment premium represents 25% of the outstanding principal and is 25 times greater than the approximate amount of mechanic's liens. A party seeking to enforce a liquidated damages provision must demonstrate some proportionality between the loss and the sum established as liquidated damages. *Kruse*,

973 N.E.2d at 593. However, as Fannie Mae argues, "the relevant question is not the size of the [prepayment premium] standing alone, but the relation between that amount and the projected loss at the time of contracting that matters." (Appellee's Br. p. 35). The prepayment premium is substantial because Strawbridge LLC's default occurred early on, some two years after disbursement of the Loan. If default had occurred later, the prepayment premium would have arguably been less given that the Yield Maintenance formula takes into account the amount of outstanding principal and remaining months for the Loan. Weinreb argues that Fannie Mae's losses consist only of "the amount of damages allegedly incurred, [*i.e.*], $72,287.12." (Appellant's Br. p. 18). However, Strawbridge LLC's default deprived Fannie Mae of the interest it bargained to receive and forced it to unwind whatever third party lending commitments it undertook to provide the Loan to Strawbridge LLC. Given that the Loan here was for approximately $6,000,000, payable over approximately ten years at a fixed annual interest rate of 6.37% for most of its term, we cannot conclude that the prepayment premium representing approximately 25% of the outstanding principal is grossly disproportionate to the losses suffered by Fannie Mae.

Nor do we accept Weinreb's argument that because it is possible that Fannie Mae could have re-lent at a higher interest rate, a factual issue exists whether Fannie Mae actually lost money due to Strawbridge LLC's default. All that is required is that the prepayment premium be reasonable and bear a relation to Fannie Mae's loss. The Note expressly recites that it is and case law instructs that prepayment premiums designed to

compensate the lender for losses occasioned by prepayment are enforceable. *See McCae Mgmt. Corp.*, 553 N.E.2d at 888. Given Fannie Mae's Loan with a fixed interest rate over a period of nine years, we conclude that the prepayment premium fairly compensates Fannie Mae for the interest lost. As a result, we conclude that the prepayment premium here is enforceable as a matter of law.

## C. *Unconscionable Agreement*

Finally, Weinreb contends that the Guaranty and the Loan Documents are unenforceable because of unconscionability. Specifically, Weinreb argues that given the non-recourse carve out provisions, there is a genuine issue of material fact whether Fannie Mae used superior bargaining power to cause hardship to him.

A contract will be deemed unconscionable when a great disparity in bargaining power exists which leads the weaker party to sign a contract unwillingly or without being aware of its terms. *Sequa Coatings Corp. v. N. Indiana Commuter Transp. Dist.*, 796 N.E.2d 1216, 1228 (Ind. Ct. App. 2003), *trans. denied*. "The contract must be 'such that no sensible man not under delusion, duress, or in distress would make, and such as no honest fair man would accept.'" *Id*. (citation omitted). However, even though there is a disparity in bargaining power between a lender and the guarantor, the contract is not unconscionable unless the disparity caused the guarantor to sign the guaranty unwillingly or caused the guarantor to be made unaware of its terms. *See Vanek v. Indiana Nat'l Bank*, 540 N.E.2d 81, 84 (Ind. Ct. App. 1989), *reh'g denied*.

Here, the designated evidence indicates that Weinreb was not in a position of weakness or unequal bargaining power. Weinreb had a significant amount of business experience and Fannie Mae's contractual right of full recourse is clearly spelled out in the Note and Weinreb's personal liability is clearly defined in the Guaranty. Further, Weinreb was an absolute guarantor under the Guaranty, which contains an express waiver of notice of any default or other protection from indebtedness. We therefore conclude that Guaranty and the Loan Documents are not unconscionable. *See Paul v. Home Bank SB*, 953 N.E.2d 497, 504 (Ind. Ct. App. 2011).

CONCLUSION

Based upon the foregoing, we conclude that claim preclusion and collateral estoppel do not preclude Weinreb from challenging the trial court's partial grant of summary judgment. Further, the trial court properly issued summary judgment to Fannie Mae regarding the Deficiency because 1) the Loan Documents are not ambiguous; 2) the non-recourse carve-outs and prepayment premium provisions of the Note are enforceable; and 3) the Guaranty and the Loan Documents are not unconscionable.

Affirmed.

KIRSCH, J. and VAIDIK, J. concur